FILED

OCT 8 2013

NOT FOR PUBLICATION

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-12-1601-JuPaD |
| ARMIN D. VAN DAMME, | Bk. No.   NC-09-41772-RLE |
| Debtor. | Adv. No. NC-09-04161-RLE |
| ARMIN D. VAN DAMME, | |
| Appellant, | |
| v. | M E M O R A N D U M* |
| HAMMER 1994 TRUST and BILL HAMMER, TRUSTEE and INDIVIDUALLY, | |
| Appellees. | |

Argued and Submitted on September 20, 2013
at San Francisco, California

Filed - October 8, 2013

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

_____

Appearances:    Christina Ann-Marie DiEdoardo, Esq. argued for appellant Armin Van Damme; John G. Benedict, Esq., argued for appellees Hammer 1994 Trust and Bill C. Hammer.

_____

Before:   JURY, PAPPAS, and DUNN, Bankruptcy Judges.

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Chapter 7[1] debtor, Armin Van Damme (defendant or debtor), appeals from the bankruptcy court's judgment in favor of creditor-appellees, Hammer 1994 Trust, Bill C. Hammer, trustee, and Bill C. Hammer, as an individual (plaintiffs or Hammer), finding that the state court judgment debt in the amount of $378,295.03 owed by debtor to plaintiffs was nondischargeable under § 523(a)(6) on the basis of issue preclusion.  We AFFIRM.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

In the late 1980's, the Hammer family built a single-family home on property located in Las Vegas, Nevada, and has lived there ever since (Hammer Property).  In January 2004, Armin and his wife, Geraldine Van Damme (collectively, the Van Dammes), purchased property in the Twin Palms subdivision (Defendant's Property).  Defendant's Property is adjacent to the Hammer Property although they are in different subdivisions.

Sometime in the mid-1980's, developers of Defendant's Property erected a stone wall along the common boundary between the Hammer Property and Defendant's Property.  The following year, developers of the Hammer Property erected a retaining and

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] In stating the facts and procedural background, we borrow heavily from the bankruptcy court's findings of fact stated on the record on August 23, 2012, from the Panel's decision in Hammer v. Van Damme (In re Van Damme), BAP No. NC-10-1169-KiSaH filed February 1, 2011, and from the Findings of Fact and Conclusions of Law (FFCL) filed by plaintiffs and adopted by the state court in Nevada District Court Case No. A493040.

-2-

privacy wall on the Hammer Property approximately one foot from the stone wall along the common boundary, leaving a gap (Gap) between the two walls. At all relevant times, plaintiffs owned the Gap.

In June 2004, the Van Dammes demolished a portion of the stone wall and began constructing a pool grotto using the Hammer Property's wall as an anchor for attaching devices to support associated pool features. Plaintiffs immediately orally advised the Van Dammes that the construction was illegal and they were trespassing and requested the Van Dammes cease all work on the pool grotto. Between June 23, 2004, and July 12, 2004, plaintiffs warned the Van Dammes on at least five occasions of the illegality of the trespass by posting "no trespassing" signs and providing them with copies of the relevant Nevada statutes. The Van Dammes removed or destroyed all of the signs. Plaintiffs also sent the Van Dammes three written notices of their trespass. The Van Dammes refused to remove that portion of the grotto encroaching on the Hammer Property and continued with its construction.

As part of the construction of the grotto, defendant submitted a building permit application representing that he owned all the land upon which the grotto would be constructed. Also during the construction of the grotto on the Hammer Property, defendant intentionally spray-painted Bill Hammer in the face and upper body.

As a result of the spray paint incident and trespass, plaintiffs filed a complaint with the local police authorities. Criminal charges were filed against defendant. At trial,

-3-

however, he was found not guilty.

In October 2004, plaintiffs commenced a civil proceeding against the Van Dammes in the Nevada state court asserting claims for trespass, quiet title, slander of title, and battery, Case No. A493040. Plaintiffs also sought an injunction requiring the Van Dammes to cease construction of the pool grotto and return the Hammer Property to its prior condition.

In response, the Van Dammes filed a counterclaim against plaintiffs asserting claims for quiet title, malicious use of process, and trespass. Van Dammes based their quiet title counterclaim on a claim for adverse possession.

Plaintiffs filed two motions for partial summary judgment, one directed at Van Dammes' counterclaim for quiet title and the other directed at their malicious use of process and trespass counterclaims. The Van Dammes did not oppose plaintiff's motion regarding their counterclaim for quiet title (they failed to file an opposition or appear at the hearing), but they did oppose plaintiff's motion regarding their counterclaims for malicious use of process and trespass.

On July 8, 2008, the Nevada state court issued two orders granting partial summary judgment in favor of plaintiffs and against the Van Dammes. The two orders effectively eliminated the Van Dammes' counterclaims against plaintiffs, as well as adjudicated plaintiffs' affirmative claim for quiet title — the Gap belonged to plaintiffs.

The first order ("PSJ Order 1") dismissed the Van Dammes' quiet title counterclaim, with prejudice. It determined that in three years of litigation the Van Dammes failed to provide a

-4-

scintilla of admissible evidence to support an adverse interest in the Hammer Property; they had failed to prove even one element of the adverse possession statute. Thus, the Nevada state court concluded that the Van Dammes' counterclaim for quiet title was filed in bad faith because no justifiable basis existed for the counterclaim.

Specifically, it ruled the Van Dammes willfully, intentionally, and deliberately encroached upon the Hammer Property by partially tearing down the stone wall and, in disregard of multiple warnings to cease and without consent, willfully, intentionally, and deliberately utilized portions of the Hammer Property wall to support the pool grotto. Further, the Van Dammes' conduct was "malicious because [their] actions were without any just cause or excuse and were substantially certain to cause harm to the [Hammer] Property . . ." as demonstrated by their refusal to cease trespass and construction of the pool grotto despite plaintiffs' repeated warnings. The Van Dammes' failure to conduct any due diligence whatsoever prior to construction was another factor showing the "willful and malicious nature of their scheme and substantially certain resulting harm for which there was no just cause or excuse." As a result, the Van Dammes' willful and malicious conduct caused the title of the Hammer Property to become uninsurable, and it caused a cloud on the title which restricted conveyance of the Hammer Property and destroyed its value at a time when it was a "seller's" market in Las Vegas.

The second order ("PSJ Order 2") dismissed the Van Dammes' counterclaims for malicious use of process and trespass, with

-5-

prejudice.  Although the Van Dammes opposed plaintiffs' underlying motion, they again failed to produce in over three years a shred of admissible evidence to support either claim.  PSJ Order 2 further stated that the Van Dammes' actions were done willfully, intentionally and deliberately and were substantially certain to, and did, result in harm to plaintiffs.

The Nevada state court tried plaintiffs' remaining claims over several days in August and October 2008.  The final date of trial was set for December 22, 2008.

On December 16, 2008, Geraldine filed a chapter 7 petition in the Northern District of California bankruptcy court, Case No. 08-47480.  In that case, Geraldine listed Mr. Hammer as a creditor.  Geraldine's filing stayed the state court action as to her.

However, the state court trial continued and was concluded as to debtor.  The Nevada court took the matter of damages under submission.

On February 25, 2009, the Nevada court issued a detailed, twenty-three page Memorandum of Decision finding in favor of plaintiffs and against debtor on all claims.  Although the state court judge signed the Memorandum of Decision on February 25, 2009, it was not filed until March 18, 2009.  The Nevada court instructed plaintiffs to prepare the FFCL in line with its decision.

On March 6, 2009, debtor filed his chapter 7 petition in the Northern District of California bankruptcy court.

**Plaintiffs' Adversary Proceeding Against Geraldine**

On the same date, plaintiffs filed an adversary proceeding

-6-

in Geraldine's bankruptcy case seeking to have their judgment debt declared nondischargeable under § 523(a)(6). Plaintiffs' then-counsel, Marion Marshall, advised the bankruptcy court that the trial in the Nevada state court had been completed and after the judgment was entered she might be able to proceed with summary judgment in the adversary against Geraldine.

On March 11, 2009, Geraldine received her discharge under § 727.

On April 29, 2009, the bankruptcy court granted plaintiffs limited relief from stay for the Nevada court to make its FFCL and enter final judgment.

Geraldine filed a motion for judgment on the pleadings under Civil Rule 12(c). Plaintiffs filed a counter motion for summary judgment (MSJ) relying on PSJ Orders 1 and 2 and issue preclusion, contending that both orders established the willful and malicious requirements under § 523(a)(6).

On October 5, 2009, the bankruptcy court heard the motions and took the matters under submission.

On November 9, 2009, the bankruptcy court entered its Memorandum of Decision denying Geraldine's motion and denying plaintiffs' MSJ. In applying California preclusion law[3] to PSJ Order 1, the bankruptcy court found that not all the elements

---

[3] In <u>Hammer v. Van Damme (In re Van Damme)</u>, BAP No. NC-10-1169-KiSaH, the Panel concluded that Nevada preclusion law rather than California preclusion law should have been applied, but that the bankruptcy court's application of California law was harmless because the same result would follow upon application of Nevada law.

for issue preclusion were met. At issue was the fourth element which requires an issue to be actually and necessarily litigated.

Although the court found that the issues of willfulness, malice, and resulting injury to an entity other than the debtor were actually litigated and determined in the state court action based on the state court's ruling in PSJ Order 1, the court determined that those issues were not "necessarily determined" because in an action to quiet title, the state of mind or motive of the party making the adverse assertion of title was irrelevant. Accordingly, the bankruptcy court determined that the state court's findings and holdings with respect to the Van Dammes' willful and malicious conduct were not "necessarily determined" in connection with the quiet title claim and thus could not be used for issue preclusion purposes in the bankruptcy court action. The court did not consider PSJ Order 2 in its decision because that order simply dismissed the Van Dammes' counterclaims for malicious use of process and trespass and did not determine any of plaintiffs' other affirmative claims: slander of title, trespass and battery. The bankruptcy court denied plaintiffs' subsequent motion for reconsideration. Plaintiffs then voluntarily elected to not proceed to trial against Geraldine.

On April 28, 2010, the bankruptcy court issued an order dismissing plaintiffs' adversary proceeding against Geraldine, with prejudice, for failure to prosecute. Plaintiffs appealed the order dismissing the adversary proceeding, the order denying their MSJ and the order denying their motion for reconsideration

to this Panel. The Panel affirmed the bankruptcy court's orders denying plaintiffs' MSJ and dismissing the case in BAP No. NC-10-1169-KiSaH.[4]

**Plaintiffs' Adversary Proceeding Against Debtor**

On March 31, 2009, plaintiffs filed the instant adversary proceeding seeking to have the state court judgment debt against debtor declared nondischargeable under § 523(a)(6). In their general allegations, plaintiffs reiterated many of the facts stated above in connection with the Nevada state court lawsuit. However, in debtor's proceeding, plaintiffs relied on the actual trial record in the Nevada state court, not just the PSJ orders, since that court had concluded the trial against debtor after Geraldine filed her bankruptcy petition. They attached copies of their state court complaint, the Nevada court's Memorandum of

---

[4] Since the adversary proceeding was dismissed, Geraldine's discharge protects postpetition community property from collection efforts by any creditor holding a prepetition community claim because a discharge permanently enjoins enforcement of prepetition community claims against all future-acquired community property:

> [A] nondebtor spouse in a community property state typically benefits from the discharge of the debtor spouse. According to Section 524(a)(3), after-acquired community property is protected by injunctions against collection efforts by those creditors who held allowable community claims at the time of filing. This is so even if the creditor claim is against only the nonbankruptcy spouse; the after-acquired community property is immune.

Rooz v. Kimmel (In re Kimmel), 378 B.R. 630, 638 (9th Cir. BAP 2007). Thus, although the issue is not before us despite the briefing of the issue in the appellate briefs, the Van Dammes' after acquired community property would be immune from collection under this holding.

Decision, and PSJ Order 1 and 2. Under their § 523(a)(6) claim, plaintiffs alleged that debtor's conduct in creating and maintaining the trespass was willful and malicious, that his conduct in spraying Bill Hammer in the face and torso with paint constituted a battery that was willful and malicious, and that debtor's conduct resulted in a slander of title to the trust property and constituted deliberate acts which were willful and malicious.

On April 17, 2009, the bankruptcy court granted limited relief from stay for the Nevada court to enter its FFCL and final judgment.[5]

On May 3, 2011, the bankruptcy court held a status conference in debtor's adversary.[6] Plaintiffs' counsel failed to appear and the adversary proceeding was dismissed.

Plaintiffs filed a motion to reconsider the dismissal based on their counsel's failure to appear at the status conference due to a calendaring error. At the August 2, 2011 hearing, the bankruptcy court granted the motion. At that time, the court asked plaintiffs' counsel whether the adversary proceeding could be decided by summary judgment. Plaintiffs' counsel advised the

---

[5] The order also retroactively annulled the automatic stay to validate the Nevada court's Memorandum Decision which was signed prepetition on February 25, 2009, but file-stamped postpetition on March 18, 2009.

[6] Evidently the parties agreed to proceed to trial in Geraldine's case first since it involved the same parties and many of the same claims. The bankruptcy court approved this approach and trailed the trial date for debtor's adversary proceeding. Thereafter, debtor's adversary proceeding was continued on multiple occasions due to the pendency of the BAP appeal in Geraldine's adversary proceeding.

-10-

court that it could; debtor's counsel disagreed. The court also noted that despite plaintiffs having limited relief from stay to return to state court to obtain the FFCL and final judgment in the Nevada state court, they had apparently taken no action to do so. In other words, there still was no final judgment entered in the state court action.[7] Plaintiffs' counsel then requested that the court not set a trial date. The bankruptcy court declined this request and set the matter for trial to commence on October 28, 2011.

On September 8, 2011, the court issued a scheduling order governing pretrial procedures. Thereafter, plaintiffs' counsel was successful in obtaining from the state court judge the signed FFCL, which plaintiffs' counsel had prepared, and a final judgment. The FFCL and judgment were filed in the state court on September 22, 2011, with notice of entry dated October 4, 2011.

On September 27, 2011, plaintiffs filed a MSJ in the adversary proceeding and scheduled a hearing for October 27, 2011, the day before trial. Plaintiffs alleged that the Nevada judgment and FFCL established the elements of their § 523(a)(6) claim for nondischargeability and thus issue preclusion should apply. Attached to the MSJ were the Nevada state court's eighty-one pages of FFCL.

On October 12, 2011, debtor appealed the state court's

---

[7] Recall that plaintiffs had obtained limited relief from stay in debtor's case on April 17, 2009. Yet, more than two years later, plaintiffs had taken no action to obtain a final judgment in the Nevada state court.

-11-

decision.

On October 13, 2011, debtor filed opposition to the MSJ. Debtor argued that the MSJ was untimely because the bankruptcy court had scheduled a trial date. Debtor also raised numerous issues as to why issue preclusion was not applicable under the circumstances.[8] Finally, debtor filed a counter motion for abuse of process complaining about plaintiffs' delay. Debtor requested dismissal of the adversary proceeding as a sanction or, in the alternative, an order to prevent plaintiffs from submitting any of the Nevada court's findings in a trial.

On October 18, 2011, debtor filed his trial brief.

On October 19, 2011, plaintiffs filed their trial brief. On October 21, 2011, the bankruptcy court entered an order vacating plaintiffs' MSJ hearing scheduled for October 27, 2011. The court noted that the parties were ready for trial and that if summary judgment were not granted in full, the trial would be delayed again which would be "inappropriate, inefficient and unfair." The court, however, noted that it may or may not give issue-preclusive effect to the Nevada court's FFCL.

On October 28, 2011, the bankruptcy court conducted the trial. In his opening statement, plaintiffs' counsel stated that he was prepared to go to trial, but believed that, as a

_____

[8] At one point debtor's counsel alleges that the state court's FFCL were "hardly a model of judicial temperance" and make "unsupported accusations of criminal activity wholly inappropriate to a civil proceeding against Mr. Van Damme. . . ." In connection with this statement, counsel contends that the judge in the Nevada action, "has been intemperate in other contexts as well" and then points out that he received a public reprimand for driving under the influence of alcohol.

matter of law, issue preclusion should be given effect based upon the Nevada court's Memorandum of Decision, the FFCL and the judgment that was entered in the state court. Debtor's counsel objected, but the bankruptcy made clear that its decision to vacate the hearing on plaintiffs' MSJ did not mean that plaintiffs could not rely upon the FFCL and the judgment that was entered. The court explained that it vacated the hearing on the MSJ because it did not want the MSJ to delay the trial. Accordingly, the bankruptcy court informed plaintiffs' counsel that he could try the case from the ground up or simply rely on the judgment and the FFCL.

The court admitted numerous documents over the objection of debtor's counsel. Plaintiffs' counsel then moved under Civil Rule 52(c) seeking to have the bankruptcy court enter judgment on the basis of the preclusive effect of the Nevada judgment and the FFCL entered in the state court action. Debtor's counsel argued against applying issue preclusion to the state court judgment and complained about plaintiffs' delay in obtaining a final judgment in the state court. She also asserted that California rather than Nevada law applied and, therefore, the state court judgment was not final because it had been appealed. Finally, she urged the bankruptcy court to throughly examine the record because plaintiffs' counsel had drafted the FFCL, citing Silver v. Exec. Car Leasing Long-Term Disability, 466 F.3d 727, 733 (9th Cir. 2006).[9]

---

[9] Silver holds that "the wholesale and verbatim adoption of one party's findings requires us to review the record and the
(continued...)

-13-

The bankruptcy court stated that it did not condone the amount of time that had passed, but found that plaintiffs' MSJ was properly filed. In vacating the MSJ, the court explained: "I just wasn't going to let it interfere with the trial, because at the time there was no findings of fact and conclusions of law or final judgment when I initially set it for the trial date." The court further found that it would apply Nevada law for purposes of applying issue preclusion. In addition, the court observed that plaintiffs' counsel's drafting of the FFCL was an issue for the Nevada court of appeal. In the end, the bankruptcy court concluded that it had to treat the Nevada judgment as final and consider its preclusive effect. The bankruptcy court took the matter under advisement.

On July 27, 2012, plaintiffs filed a motion requesting a status conference regarding the bankruptcy court's decision. Apparently plaintiffs had filed a cross-appeal in the state court and the Nevada Supreme Court ordered the pending appeal to be assigned to the Mandatory Settlement Program. The assigned settlement judge vacated the settlement hearing due to the fact that the bankruptcy court had not yet issued its decision and, as a result, she did not feel she had authority to conduct the settlement hearing. The Nevada Supreme Court later issued an order which instructed state counsel for debtor to file a status report regarding the bankruptcy proceeding within fifteen days. Plaintiffs represented that debtor's counsel did not file any

[9](...continued)
[bankruptcy] court's opinion more thoroughly."

status report and therefore contended that they were caught in a "whipsaw" between the bankruptcy court and their duties and responsibilities to report objectively and accurately to the Nevada Supreme Court. Therefore, plaintiffs requested a hearing so that they could obtain information from the court regarding the status of its decision.

On the same day, debtor's counsel filed a response to plaintiffs' motion. Counsel stated that she was not representing debtor in the state court appeal and told the court to take all the time it needed "to issue a reasoned and proper decision."

On August 23, 2012, the bankruptcy court read its FFCL into the record. The court gave preclusive effect to the state court's FFCL and concluded that the judgment debt was nondischargeable under § 523(a)(6).

On October 30, 2012, the bankruptcy court entered the judgment finding the amount of $378,295.03 nondischargeable. Broken down, the bankruptcy court found that as to all plaintiffs, for trespass and slander of title, actual damages of $36,400, punitive damages of $200,000, attorneys' fees of $10,000 for trespass, and attorneys' fees of $100,000 for slander of title, for a total of $346,400 were nondischargeable under § 523(a)(6). As to Bill C. Hammer, an individual, for battery, compensatory damages of $10,000, and punitive damages of $10,000, for a total of $20,000 was nondischargeable under § 523(a)(6). As to all plaintiffs, costs awarded in the amount of $11,895.03 were deemed nondischargeable under § 523(a)(6).

On November 12, 2012, debtor filed a timely notice of

-15-

appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred by giving preclusive effect to the state court judgment for purposes of exclusion from discharge under § 523(a)(6).

## IV. STANDARD OF REVIEW

We review de novo the bankruptcy court's determination that issue preclusion is available. Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007). Once we determine that issue preclusion is available, we review whether applying it was an abuse of discretion. Id. A bankruptcy court abuses its discretion when it applies the incorrect legal rule or its application of the correct legal rule is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010) (quoting United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009)(en banc)(internal quotation marks omitted)).

The question whether a claim is dischargeable presents mixed issues of law and fact, which we also review de novo. Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001).

///

///

-16-

**A.  Civil Rule 52(c)**

We first address debtor's assertion that the bankruptcy court's consideration of plaintiffs' Civil Rule 52(c) motion seeking judgment against debtor on issue preclusion grounds was procedurally improper.  According to debtor, plaintiffs' Civil Rule 52(c) motion was procedurally inappropriate because the bankruptcy court had advised plaintiffs' counsel that it would not continue the trial to consider a tardy motion for summary judgment seeking nondischargeability of the state court judgment debt based on issue preclusion and then, at the trial, the court entertained plaintiffs' oral motion for a judgment based on issue preclusion and took the matter under submission.  As a result, debtor maintains that his due process rights were compromised because he was deprived of his right to a trial.  We disagree with debtor's procedural analysis.

Under Civil Rule 52(c), made applicable to this adversary proceeding by Rule 7052, a court may grant a motion made by either party, or may grant judgment sua sponte at any time during a bench trial, so long as the party against whom judgment is to be rendered has been "fully heard" with respect to an issue essential to that party's case.[10]  As a result, the court

_____

[10] Civil Rule 52(c) provides in relevant part:

If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against that party on a claim or defense that, under the controlling law, can be maintained or defeated only with a

(continued...)

-17-

need not wait until that party rests its case-in-chief to enter judgment. Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1031 (9th Cir. 1996) ("[T]he rule 'authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence.'").

The requirement that a party must first be "fully heard" does not "amount to a right to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence." First Va. Banks, Inc. v. BP Exploration & Oil, Inc., 206 F.3d 404, 407 (4th Cir. 2000). The trial court has discretion to enter a judgment on partial findings even though a party has represented that it can adduce further evidence if, under the circumstances, the court determines that the evidence will have little or no probative value. Id.

Here, the bankruptcy court considered plaintiffs' Civil Rule 52(c) motion after the parties' opening statements and after considering debtor's objections to plaintiffs' evidence. The court also allowed argument of counsel on whether judgment was appropriate on issue preclusion grounds. In her opening statement and again during the trial, debtor's counsel argued that, the evidence would show that at most, debtor's actions were negligent but not willful and malicious. Further, debtor's counsel argued vigorously against the application of issue preclusion. Finally, the bankruptcy court asked plaintiffs'

---

[10](...continued)
favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. . . .

counsel numerous questions about the state court judgment and FFCL to determine whether their Civil Rule 52(c) motion was warranted.

We surmise that after hearing the parties' extensive arguments and the bankruptcy court's examination of the evidence in support of issue preclusion, the court concluded that it was "manifestly clear" that debtor's testimony could not prove that the state court judgment had no preclusive effect. Once it determined that debtor's testimony would not be sufficient to rebut the application of issue preclusion, the bankruptcy court properly exercised its discretion to halt the trial and take the matter under submission. See Granite State Ins. Co., 76 F.3d at 1031; Stone v. Millstein, 804 F.2d 1434, 1437-38 (9th Cir. 1986). Accordingly, plaintiffs' Civil Rule 52(c) motion was procedurally appropriate, and debtor was not deprived of his right to a trial.

**B.    Section 523(a)(6)**

Plaintiffs bear the burden of proving their claims against defendant are excepted from discharge under § 523(a)(6) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284 (1991). Section 523(a)(6) excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

The standards for determining whether a debt falls within the scope of § 523(a)(6) are well-defined. First, nondischargeable debts under § 523(a)(6) must arise from intentionally inflicted injuries. Carrillo v. Su (In re Su), 290 F.3d 1140, 1143 (9th Cir. 2002) (citing Kawaauhau v. Geiger,

-19-

523 U.S. 57 (1998)). Second, the "willful" and "malicious" requirements under the statute involve separate analyses. In re Su, 290 F.3d at 1146–47; see also Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 711 (9th Cir. 2008) (reinforcing Su and the requirement of courts to apply a separate analysis for each prong of "willful" and "malicious").

A willful injury is proved by establishing facts that show the debtor had the subjective intent to cause harm or the subjective knowledge that harm was substantially certain to occur from his conduct. Su, 290 F.3d at 1146. Proving malicious conduct requires a showing that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily caused injury; and (4) was done without just cause or excuse. Id. at 1146–47.

**C.   Issue Preclusion**

The doctrine of issue preclusion applies to bankruptcy dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 284 (1991). Plaintiffs had the burden of proving that the elements for issue preclusion were met. Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). To sustain this burden, plaintiffs must have introduced a record sufficient to reveal the controlling facts and the exact issues litigated in the prior action. Reasonable doubts about what was decided in the prior action should be resolved against the party seeking preclusion. Id.

In determining the preclusive effect of a state court judgment in nondischargeability proceedings, we apply the issue

-20-

preclusion rules of the state from which the judgment arose. 28 U.S.C. § 1738; <u>Gayden v. Nourbakhsh (In re Nourbakhsh)</u>, 67 F.3d 798, 800 (9th Cir. 1995). Debtor contends that the bankruptcy court erred by applying Nevada law rather than California law. According to debtor, without citation to any authority, the proper subject of inquiry is the preclusion law of the state of residence of the debtor, since the point of the proceeding is whether or not plaintiffs' claims would be excepted from debtor's chapter 7 discharge. Debtor is mistaken.

The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . <u>from which they are taken</u>." 28 U.S.C. § 1738 (emphasis added); <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985). Debtor's argument not only turns the plain language of the full faith and credit statute on its head, but also ignores scores of case authorities that apply the issue preclusion rules of the state from which the judgment arose. <u>See, e.g.</u> <u>In re Nourbakhsh</u>, 67 F.3d at 800; <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 321 (9th Cir. 1988) (Full Faith and Credit Act requires federal courts to apply the res judicata rules of a particular state to judgments issued by courts of that state and therefore the court applied California law of res judicata to California judgment, New York law to New York judgment and federal law to federal judgment) (citing <u>Parsons Steel, Inc. v. First Ala. Bank</u>,

-21-

474 U.S. 518, 519 (1986)). Accordingly, since plaintiffs' judgment was entered by a Nevada court, that state's issue preclusion law applies.

Under Nevada law, application of issue preclusion requires that (1) the issue is identical; (2) the initial ruling was final and on the merits; (3) the party against whom the judgment is asserted was a party or in privity with a party in the prior case; and (4) the issue was actually and necessarily litigated. Five Star Capital Corp. v. Ruby, 194 P.3d 709, 713 (Nev. 2008). At the outset, we observe that the record shows that the third element has been met; the parties are the same.

**1.   The Issues are Identical**

Here, when the elements for plaintiffs' § 523(a)(6) claim are compared to the elements of their state court slander of title, trespass, and battery claims, the issues are identical. Slander of title, trespass and battery are all intentional torts under Nevada law.  They thus fall within the purview of § 523(a)(6) under Geiger, 523 U.S. at 60-62.

Slander of title "involves false and malicious communications disparaging to one's title and land and causing special damages." Exec. Mgmt. v. Ticor Title Ins. Co., 963 P.2d 465, 478 (Nev. 1988).  Malice is a necessary element of a slander of title claim.  "In order to prove malice it must be shown that the defendant knew that the statement was false or acted in reckless disregard of its truth or falsity." Rowland v. Lepire, 662 P.2d 1332, 1335 (Nev. 1983).

Under Nev. Rev. Stat. 207.200, "any person who, under circumstances not amounting to a burglary: . . .(b) [w]illfully

-22-

goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass, is guilty of a misdemeanor."

Nev. Rev. Stat. 200.481(1)(a) defines a battery as any willful and unlawful use of force or violence upon the person of another.

Finally, as to punitive damages, Nev. Rev. Stat. 42.005 mandates clear and convincing evidence of conduct which constitutes "oppression, fraud or malice, express or implied," all of which terms are defined in Nev. Rev. Stat. 42.001: (1) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person; (2) "Fraud" means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his or her rights, property or to otherwise injure another person; and (3) "Malice, express or implied" means conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others.

### 2.    The Nevada Judgment is Final

Debtor argues on appeal that the order which plaintiffs rely upon was not a "final order" because it was under appeal to the Nevada Supreme Court at the time of the October 28, 2011 trial.  Under Nevada law, in issue preclusion cases, a decision is final and maintains its preclusive effect even if the judgment is on appeal. Edwards v. Ghandour, 123 Nev. 105, 117, 159 P.3d 1086, 1094 (2007), rejected on other grounds by Five

-23-

Star Capital, 124 Nev. at 1053-54, 194 P.3d at 712-13 (Nev. 2008). Nevada's Supreme Court recognizes that in circumstances where the first judgment is reversed or vacated and a second judgment was rendered based on issue preclusion, the second judgment should also be reversed. Edwards, 159 P.3d at 1094. Here, the bankruptcy court also recognized this premise.[11] There is no indication in the record that the Nevada Supreme Court has reversed the judgment. Therefore, the judgment is final for issue preclusion purposes.

**3. The Issues Were Actually and Necessarily Litigated**

Under Nevada law, an issue is actually and necessarily litigated if the "court in the prior action addressed and decided the same underlying factual issues." Kahn v. Morse & Mowbray, 117 P.3d 227, 235 (Nev. 2005). Here, the Nevada court's Memorandum Decision and the more detailed FFCL show that the prior action addressed and decided the same underlying factual issues that are raised in this nondischargeability action.

We start with the trial court's findings in its Memorandum Decision which demonstrate that during the course of the trial, the elements for a willful and malicious injury under § 523(a)(6) were squarely addressed. That debtor's conduct was willful is borne out by the trial court's finding that all the elements for the intentional torts of slander of title, trespass and battery were met. Furthermore, several findings demonstrate

---

[11] Civil Rule 60(b)(5), incorporated by Rule 9024, expressly allows relief from judgment when an underlying judgment has been reversed or vacated.

-24-

debtor's subjective intent to harm plaintiffs. The trial court found that (1) debtor was the aggressor in each important confrontation; (2) debtor cared nothing about the fact that some of the Gap across which he trespassed and the wall he used as structural support for his beloved grotto didn't ever belong to him; and (3) referring to an exhibit, the court noted that debtor had a "gleeful look" in his eyes when he carried the paint gun up the ladder before spraying Hammer in the face.

The trial court's findings also expressly show that malice motivated debtor's actions against plaintiffs. In addressing the battery claim, the trial court found that debtor "intentionally assaulted Mr. Hammer, and the [c]ourt finds that he did so with malice and without sufficient provocation." In awarding punitive damages on this claim, the court found that in the "context of this case, it is truly serious and egregious behavior on the part of Mr. Van Damme. As a consequence, the [c]ourt is going to award exemplary damages, in the hope that part of this Judgment will survive a [bankruptcy] petition by Mr. Van Damme . . . ."

In addressing the slander of title and trespass claims, the trial court found that each of the elements for slander of title and trespass had been proven at trial by preponderance of the evidence, "including by clear and convincing evidence the necessary malice to support an award of exemplary damages. It was the same continuing malice, which infected and motivated Mr. Van Damme's actions in his trespass, in his lawsuit and in his fraudulent claim to title."

The FFCL fill in more detail. In the FFCL, the court found

-25-

that debtor acted willfully, wantonly, and maliciously by continuing to build the grotto and encroach on the Hammer Property "knowing full well that such action would impede, impair, or diminish the value of the property owned by the Trust." The findings further show that plaintiffs repeatedly told the Van Dammes verbally and in writing that they owned the Gap, posted "No Trespassing" signs, obtained a Record of Survey showing that the Hammer Trust owned all the property in the GAP and attached that survey to the verified complaint plaintiffs filed and served on the Van Dammes. Nonetheless, despite plaintiffs' warning to cease construction of the grotto, the Van Dammes continued with the construction of the grotto, falsely asserted ownership to the Gap, and trespassed on the Hammer Property. Finally, the trial court found that the "Van Dammes had absolutely no good faith basis for a claim of ownership to any property in the [G]ap or to the Hammer [t]rust [p]rivacy [w]all." These findings leave no doubt that debtor had the subjective intent to cause plaintiffs harm. Su, 290 F.3d at 1146.

They further show that debtor acted with malice. He committed the wrongful acts of slander of title, trespass and battery, and did so intentionally. The Nevada court found that those acts caused plaintiffs economic harm and were done without just cause or excuse. Id. at 1146-47.

Any liability duly imposed as a direct, but-for result of the defendant's nondischargeable conduct constitutes a nondischargeable debt, regardless of whether the liability reflects the actual damages incurred by the plaintiff. See

Cohen v. de la Cruz, 523 U.S. 213, 220 (1998) (holding nondischargeable under § 523(a)(2)(A) treble damages based on debtor's fraudulent conduct).  Therefore, on the slander of title and trespass claims with respect to all plaintiffs, actual damages of $36,400, punitive damages of $200,000, plus attorneys' fees of $10,000 attributable to the trespass, and $100,000 attributable to the slander of title for a total of $346,400 are nondischargeable under § 523(a)6).  On the battery claim, with respect to Bill C. Hammer individually, actual damages of $10,000 and punitive damages of $10,000 are nondischargeable under § 523(a)(6).  As to all plaintiffs, costs awarded in the amount of $11,895.03 as determined by the Nevada state court are also nondischargeable under § 523(a)(6).

**D.    Abuse of Discretion**

Having concluded that issue preclusion was available because all of the doctrine's requirements were met, we consider next whether the bankruptcy court properly exercised its discretion to apply it.  "The discretionary aspect of issue preclusion is settled as a matter of federal law."  In re Lopez, 367 B.R. at 107–08.  Nevada law is in accord, holding that once it is determined that issue preclusion is available, the actual decision to apply it is left to the discretion of the "tribunal in which it is invoked."  Redrock Valley Ranch v. Washoe Cnty., 254 P.3d 641, 646–47 (Nev. 2011).  The doctrine of issue preclusion is grounded in considerations of basic fairness to the litigants.  In re Sandoval, 232 P.3d at 424–25.

Debtor contends that issue preclusion should not be available because the trial judge rubber-stamped plaintiffs'

-27-

views by signing the FFCL. However, we see no rubber-stamping here. The trial court itself provided the framework for the proposed FFCL when it issued its Memorandum Decision. In its decision, the trial court set forth its essential findings and directed plaintiffs' counsel to submit a more detailed set of findings consistent with them. Under these circumstances, we see no reason to doubt that the FFCL signed by the trial judge represent the judge's own considered conclusions regarding debtor's conduct. See Anderson v. City of Bessemer, N.C., 470 U.S. 564, 572 (1985).

Debtor also complains that the bankruptcy court erred by applying issue preclusion "retroactively" because debtor's bankruptcy and adversary proceeding predated the state court judgment by several years. Debtor's use of the term "retroactive issue preclusion" is misleading. What debtor seems to be complaining about is plaintiffs' long delay in filing the FFCL in the state court, requesting entry of a final judgment and then over two years later proceeding with the bankruptcy court trial. However, part of the delay in proceeding with debtor's trial was the bankruptcy court's decision to postpone the trial until plaintiffs' adversary proceeding against debtor's wife in her bankruptcy case concluded.

In sum, while in certain cases it is fundamentally unfair to apply issue preclusion, this is not such a case. Therefore, the bankruptcy court did not abuse its discretion in applying the doctrine to the state court judgment.

**E.    Entry of a Money Judgment**

Finally, debtor argues that the bankruptcy court erred in

-28-

granting plaintiffs a money judgment given that their complaint only sought a finding that an allegedly preexisting claim was excepted from debtor's discharge. Bankruptcy courts in this Circuit have subject matter jurisdiction to enter a money judgment in a nondischargeability proceeding where the underlying debt has been reduced to judgment in a state court. Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 869-70 (9th Cir. 2005); Deitz v. Ford (In re Deitz), 469 B.R. 11, 20 (9th Cir. BAP 2012). To the extent debtor is arguing that the bankruptcy court granted relief beyond that requested in the complaint, that contention is wholly without merit.

## VI. CONCLUSION

For the reasons stated above, we conclude that the bankruptcy court properly applied issue preclusion and we see no abuse of discretion in the bankruptcy court's decision. Therefore, plaintiffs' judgment debt against debtor is nondischargeable under § 523(a)(6). We AFFIRM.

-29-