NOT FOR PUBLICATION

FILED

NOV 10 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-13-1400-JuKuPa |
| RICHARD JOHN MULLIN and GAYLE ANNE HARSMA, | Bk. No. NC-12-33539 |
| Debtors. | Adv. No. NC-13-3026 |
| RICHARD JOHN MULLIN; GAYLE ANNE HARSMA, | |
| Appellants, | |
| v. | M E M O R A N D U M* |
| WELLS FARGO BANK, N.A. | |
| Appellee. | |

Argued and Submitted on October 23, 2014
at San Francisco, California

Filed - November 10, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Dennis Montali, Bankruptcy Judge, Presiding

Appearances:    Michael James Yesk, Esq. argued for appellants; Robert Collings Little, Esq. of Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP argued for appellee.

Before:  JURY, KURTZ, and PAPPAS, Bankruptcy Judges.

     * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Debtors Richard Mullin and Gail Harsma appeal from the bankruptcy court's order dismissing with prejudice their first and second amended adversary complaints filed against appellees, Wells Fargo Bank, N.A. (WFB), Wells Fargo Home Mortgage, Cal-Western Reconveyance Corporation (Cal-Western), and Deutsche Bank National Trust Company as Trustee for World Savings Remic 27. Finding no error, we AFFIRM.

## I. FACTS

**A. Prepetition Events**

In 2006, debtors obtained a $465,000 loan from WFB's predecessor World Savings Bank, FSB (World Savings), which was secured by a deed of trust (DOT) recorded against their real property located in San Rafael, California.

In January 2008, World Savings changed its name to Wachovia Mortgage, FSB (Wachovia). In November 2009, Wachovia merged with WFB.

Debtors defaulted on the loan at the end of 2009, and WFB initiated nonjudicial foreclosure proceedings against the property in 2010. A notice of default (NOD) was recorded in July 2010. Two months later, a substitution of trustee (SOT) was recorded naming Cal-Western as trustee. A notice of trustee's sale was recorded in October 2011, and again in January 2012. The total amount of indebtedness at that point had reached $543,301.

A trustee's sale was conducted on May 1, 2012. WFB took ownership of the property by virtue of a credit bid, and a trustee's deed upon sale (TDUS) was recorded on May 8, 2012. This document incorrectly called WFB "Wells Fargo Home Mortgage,

A Division Of Wells Fargo Bank, N.A." Consequently, a corrective TDUS was recorded on May 17, 2012, specifying "Wells Fargo Bank, N.A." as grantee.

Shortly after the foreclosure, WFB filed a lawsuit against debtors in the Marin County Superior Court seeking equitable relief and damages. WFB alleged that debtors had carried out an illegal scheme to reconvey the DOT without its knowledge or consent and had attempted to deprive it of its right to recover its security for the loan. WFB further alleged that debtors recorded various documents that purported to indicate that its NOD was rescinded, the DOT had been modified to reflect that the note had been paid in full, and the DOT reconveyed as if the underlying obligation had been paid in full. WFB sought cancellation of the various documents and to quiet title and alleged causes of action for fraud and notary liability. Attached to the complaint were the documents that debtors allegedly had fraudulently recorded.

**B.    Bankruptcy Events[1]**

Debtors filed their joint petition under chapter 13[2] on December 19, 2012, which stayed the state court proceeding. WFB

---

[1] We have exercised our discretion to independently review several electronically filed documents in debtors' underlying bankruptcy case in order to develop a fuller understanding of the record. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957–58 (9th Cir. 1989).

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are the Federal Rules of Civil Procedure.

-3-

moved for relief from stay. Debtors then filed an emergency motion to enforce the automatic stay in the bankruptcy court, alleging that the state court was holding case management hearings in violation of the stay. The bankruptcy court denied debtors' request for an emergency stay and set the matter to be heard at WFB's relief from stay hearing. At that hearing, the court orally issued an order to show cause why debtors' case should not be dismissed because they were ineligible for chapter 13 relief, and all matters were continued to February 20, 2013.

At the February hearing, the bankruptcy court did not dismiss debtors' case, but ordered them to file an adversary proceeding against WFB by February 27, 2013, and also ordered them to begin making adequate protection payments of $2,100 per month to WFB.

## 1. The Adversary Proceeding

On February 27, 2013, debtors as pro se plaintiffs commenced the adversary proceeding from which this appeal arises. The adversary proceeding cover sheet states the causes of action are "Wrongful Foreclosure/Quiet Title & Rescind [sic] of Sale of Real Property/Tender of Default Amount at the Time of Default." Debtors did not organize their complaint along these lines, but alleged causes of action based on variations of wrongful foreclosure and violations of state and federal statutory law. Due to the length of the complaint, we recite an abbreviated version of the causes of action which all revolve around WFB's standing to foreclose on their property.

In their first cause of action, debtors sought a

-4-

determination of the extent and validity of the lien and quiet title. Debtors alleged that WFB was neither the holder of the note nor did it have the right to enforce it. One basis for this allegation was the securitization of the loan. In that process the loan was sold as part of a mortgage backed securities trust, and thus the lender no longer had any interest in the loan or note and no power to transfer it. Debtors also alleged that the purported trustee sale was in violation of numerous state and federal laws, including the Fair Debt Collection Practices Act (FDCPA).

In their second cause of action to recover money for false recorded documents and notary fraud, debtors alleged that essentially all the documents that had been recorded in connection with the foreclosure were false for various reasons, including, but not limited to, robo-signing violations.

In their third cause of action, debtors sought declaratory relief seeking to have all the documents recorded in connection with the foreclosure declared null and void on the grounds that WFB did not have standing to enforce the note.

Debtors' fourth cause of action was a contingent claim for credit for third party payments. Debtors alleged that if any entity could come forward and prove itself the owner of the note, debtors would show that they had been discharged by satisfaction of the entire obligation by a combination of payments from themselves plus payments from third party sources. If WFB proved any right to payment on the loan, debtors sought a complete accounting.

## 2. WFB's Motion To Dismiss

WFB filed a motion to dismiss (MTD) the complaint under Civil Rule 12(b)(6). Attached to the MTD were judicially noticeable documents showing the name change of World Savings to Wachovia and Wachovia's merger with WFB. These documents showed that WFB was the holder of the note and the beneficiary under the DOT. Based on these documents and legal authorities cited, WFB maintained that all of debtors' causes of action asserted in the complaint failed to state a claim for relief.

In response to the MTD, debtors filed a first amended complaint (FAC). The FAC did not materially differ from the initial complaint. In the FAC, debtors again alleged that WFB was not the holder of the note nor did it have the right to enforce the note. They again sought cancellation of the various documents associated with the foreclosure and requested declaratory relief that such documents were null and void. Debtors also alleged that they exercised their right of redemption and WFB failed to verify the amount due, provide an accounting, or verify the identity of the creditor. Therefore, debtors maintained that, under California law, the note was no longer secured. Finally, debtors alleged WFB had violated the FDCPA.

In the prayer for relief, debtors requested a decree stating that WFB "never acquired an enforceable interest in the note and DOT as alleged above."

At the hearing on the MTD, after some discussion with the parties, the bankruptcy court treated debtors' FAC as a "response" to the MTD. The bankruptcy court opined that the FAC

was just a "re-shuffling" of the facts, and that the FAC still came down to the basic contention that WFB did not have standing to proceed with the foreclosure. Therefore, the FAC did not change the bankruptcy court's analysis with respect to the pending MTD. No party objected to the bankruptcy court's intent to apply the MTD to the allegations in the FAC.

Without addressing the merits of the MTD as it pertained to the FAC, debtors' counsel stated that he should have the opportunity to file a second amended complaint (SAC) because the California Homeowner's Bill of Rights (HBOR)[3] that went into effect January 1, 2013, applied to debtors' circumstances. The bankruptcy court questioned whether that law would apply retroactively since the foreclosure of debtors' home had taken place in May 2012. Debtors' counsel represented that if the HBOR was not applicable, and if none of the other facts alleged would afford relief for debtors in the action, the complaint then should be dismissed.

In dismissing the FAC, the court stated:

> Wells Fargo has the winning argument. The Ninth
> Circuit made it clear that involvements of MERS do not

---

[3] The HBOR, and specifically Cal. Civ. Code § 2924.18(a)(2), prohibits the practice of "dual tracking" by mortgage servicers if the borrower is working on securing a loan modification. Cal. Civ. Code § 2924.18(a)(2). When a homeowner completes an application for a loan modification, the foreclosure process is essentially paused until the complete application has been fully reviewed, and the borrower's mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent "shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification." Id.

-7-

> - and MERS functioning in the foreclosure process, as much as it's been attacked by countless borrowers and confusing to countless borrows [sic] and lawyers and judges, the Ninth Circuit has made it clear that even if MERS technically splits the note from the trustee by its function, that that [sic] doesn't jeopard [sic] -- or deprive the lender from foreclosing.

The bankruptcy court found that the decision in Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045 (9th Cir. 2011), supported its view. The court noted that other courts have rejected various theories that somehow securitization of a loan diminishes the power of sale. Finally, the bankruptcy court found that the notion of a robo-signer did not create a fraud if there's no dispute about the underlying default. The court concluded that the MTD was "well-taken" and dismissed the FAC with leave to amend only to state a cause of action under the HBOR. The bankruptcy court entered the order consistent with its decision on May 6, 2013.

### 3. The SAC

A month later, debtors filed the SAC. In the first cause of action, debtors alleged that the HBOR did not preclude the rescission of the foreclosure sale where the lender has accepted post-petition payments. The remainder of the SAC contained factual allegations and causes of action similar to those in the FAC. This time in their prayer for relief, debtors requested an accounting, ongoing protection of the adequate protection order, attorney's fees and costs, and protections afforded under the HBOR to give them a good faith opportunity to enter into a viable "workout" plan with the lender.

### 4. WFB's Second MTD

WFB filed a second MTD. WFB argued that debtors failed to

state a cause of action under the HBOR because conduct occurring before its effective date could not give rise to a claim for relief. In addition, WFB asserted that the completed and proper non-judicial foreclosure sale extinguished the lien on the property and thus there was no lien for debtors to modify.

Debtors opposed, arguing that they were in an active loan modification and there was no justification to depart from the protection of the HBOR. They also asserted that they were compliant with the adequate protection order issued by the bankruptcy court and therefore WFB would not be prejudiced if the matter were to proceed to trial. Finally, debtors pointed out there was litigation that resulted in WFB being fined over $3 million dollars and that the person who signed the TDUS on behalf of Cal-Western was a "suspected robo-signor." Debtors submitted various exhibits purporting to support these last arguments.[4]

Debtors' declaration filed in support stated that they were trying to ascertain the merits of WFB's state court action against them and believed discovery in the adversary proceeding would show there was fraud in the purported foreclosure. They further declared that "[i]t would appear that this bank is

---

[4] The purpose of a motion to dismiss under Civil Rule 12(b)(6) is simply to test the legal sufficiency of the complaint. Therefore, our inquiry is limited to the content of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). While some of the exhibits pass muster as a public record permissible for consideration in the context of a Civil Rule 12(b)(6) motion, none of them have had any bearing on our resolution of any portion of WFB's second MTD which addressed the applicability of the HBOR.

guilty of much predatory lending to others such as ourselves."[5]

On July 31, 2013, the bankruptcy court entered an order dismissing debtors' SAC. The court found that since all the alleged misconduct by WFB occurred prior to January 1, 2013, the effective date of the HBOR, debtors had no viable claim under that statute. See Sepehry-Fard v. Aurora Bank FSB, 2013 WL 2239820, at *3 (N.D. Cal. May 21, 2013). Moreover, the bankruptcy court noted that it had already dismissed the remaining causes of action and that debtors were not given leave to revive them. Therefore, the SAC in its entirety was dismissed. The court took the hearing on the second MTD off calendar.

### 5. Post-Dismissal Pleadings

After the bankruptcy court issued its order, debtors' counsel filed a pleading consenting to a substitution of attorney which had the effect of leaving debtors representing themselves.

Debtors then filed a supplemental response pro se in opposition to WFB's second MTD. Debtors stated that they simply wanted to have a workable loan and work out a payment plan to the true creditor. They also filed an emergency request for enlargement of time under Rule 9006(b), seeking an extension of time before the court ruled on the second MTD so that they could replace their attorney and proceed with their case. Debtors

---

[5] Likewise, consideration of debtors' declaration is improper in a Civil Rule 12(b)(6) motion. Again, we note that the declaration does not have any bearing on the resolution of any portion of WFB's second MTD.

maintained that their current attorney was not familiar with their non-judicial remedies in conjunction with their consumer rights.

The bankruptcy court received debtors' supplemental response after it entered the July 31, 2013 order dismissing the SAC. Therefore, the court treated the pleading as a motion for reconsideration of the dismissal order. The bankruptcy court found the pleading simply repeated arguments previously made and rejected by the court and thus there was no basis for reconsideration under Rules 9023 or 9024. The court denied the motion by order entered on August 5, 2013, and reiterated that the adversary proceeding remained dismissed with prejudice.

Debtors timely appealed from this order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court erred in dismissing debtors' FAC;

B. Whether the bankruptcy court erred in dismissing debtors' SAC;

C. Whether the bankruptcy court abused its discretion in dismissing the SAC with prejudice; and

D. Whether the bankruptcy court abused its discretion by treating debtors' supplemental response as a motion for reconsideration and then denying it.

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's decision to grant a motion to dismiss an adversary complaint de novo. <u>Movsesian v. Victoria Versicherung AG</u>, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc).

We review the bankruptcy court's decision to dismiss an adversary complaint without leave to amend for an abuse of discretion. <u>Henry A. v. Willden</u>, 678 F.3d 991, 998 (9th Cir. 2012). We also review for an abuse of discretion a denial of a motion for reconsideration. <u>First Ave. W. Bldg. LLC v. James (In re OneCast Media, Inc.)</u>, 439 F.3d 558, 561 (9th Cir. 2006).

In determining whether the bankruptcy court abused its discretion we first determine de novo whether the trial court identified the correct legal rule to apply to the relief requested and then, if the correct legal standard was applied, we determine whether the court's application of that standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." <u>United States v. Loew</u>, 593 F.3d 1136, 1139 (9th Cir. 2010).

## V. DISCUSSION

### A. Standards For Dismissal Under Civil Rule 12(b)(6)

Rule 7012(b) makes Civil Rule 12(b)(6) applicable to adversary proceedings. When ruling on a motion to dismiss under Civil Rule 12(b)(6), "we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." <u>Movsesian</u>, 629 F.3d at 905. However, we need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. <u>See</u>

Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). Moreover, we are not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

We then must determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. In the end, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). If the allegations show that relief is barred as a matter of law, the complaint is subject to dismissal. Jones v. Bock, 549 U.S. 199, 215 (2007).

Finally, the purpose of a motion to dismiss under Civil Rule 12(b)(6) is simply to test the legal sufficiency of the complaint. Therefore, our narrow scope of review of the orders on appeal does not allow us to reach the merits of any issue, and our inquiry is limited to the content of the complaint.

-13-

N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d at 581.

**B.    The Bankruptcy Court Did Not Err In Dismissing The FAC.**

On appeal, debtors argue the dismissal of the FAC was improper because the bankruptcy court made inaccurate factual findings and legal conclusions, and its attempt to dispose of the adversary proceeding on the basis of rote statements of fact and law, that did not even apply to their case, constituted an abuse of discretion.  In this regard, debtors assert that the bankruptcy court improperly mentioned MERS when MERS is not, and has never been, a party to this action and they never alleged any claim against MERS or based any of their claims on MERS's practice of splitting the note from the deed of trust.  Debtors also contend that the court improperly relied on a securitization theory that they never alleged in dismissing their FAC.  Finally, debtors argue that the bankruptcy court incorrectly found that they never disputed the default when they disputed the amount owed and also alleged that the default was noticed by the wrong party in the FAC.

Putting these assignments of error aside, debtors acknowledge that the crux of their allegations in the FAC relate to their challenge to WFB's standing to initiate foreclosure proceedings against their property despite not being the true beneficiary under the DOT.  As borrowers on the loan, they maintain that they have standing to challenge foreclosure conducted at the direction of the incorrect party, citing Glaski v. Bank of Am., N.A., 218 Cal.App.4th 1079, 1094 (Cal. Ct. App. 2013) in support.

We are not persuaded by these arguments.  The record shows

-14-

that the bankruptcy court was fully aware that the crux of debtors' original complaint and FAC was their allegation that WFB did not have standing to foreclose on their property. We interpret the court's comments at the dismissal hearing to simply provide a context for this litigation by noting a long line of case law that has rejected standing arguments such as here, based on improper party assertions or chain of title issues.

Error, or not, our review of the bankruptcy court's decision to dismiss the FAC is de novo. De novo means that we examine a matter anew, as if no decision previously had been rendered, giving no deference to the bankruptcy court's prior determinations. Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009). We may affirm the bankruptcy court's decision on any grounds supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

"[H]owever inartfully pleaded," the FAC which was filed pro se must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief.'" Nordeen v. Bank of Am., N.A. (In re Nordeen), 495 B.R. 468, 477 (9th Cir. BAP 2013). "However, no matter how a complaint is worded, ultimately it must state a legally cognizable claim entitling the claimant to some relief in order to survive a motion to dismiss." Id. None of debtors' allegations, on the whole or specifically, state a cause of action to invalidate the foreclosure sale or the

-15-

trustee's deed conveying the property to WFB or to support an award of monetary damages.

While debtors label their causes of action somewhat differently, their causes of action seeking to set aside the trustee's sale can be summarized as: wrongful foreclosure, voiding or cancellation of the recorded trustee's deed upon sale, quiet title, and declaratory relief.

### 1. Wrongful Foreclosure

Under California law, the elements to maintain a wrongful foreclosure claim are the same as for obtaining the equitable set-aside of a trustee's sale. See Lona v. Citibank, N.A., 202 Cal.App.4th 89, 104 (Cal. Ct. App. 2011). A plaintiff must allege that: "(1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering." Chavez v. Indymac Mortg. Servs., 219 Cal.App.4th 1052, 1062 (Cal. Ct. App. 2013). Absent any evidence to the contrary, a nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly. See Cal. Civ. Code § 2924.

Although debtors do not discuss the above-cited legal elements, they alleged in the FAC: (1) the foreclosure sale was illegal because WFB was not the holder of their note and thus did not have the right to enforce the note; (2) due to WFB's lack of standing and other irregularities, the NOD, the notice of trustee sale, and the corrective TDUS are all false, suffer from fatal defects, and are "void or voidable"; (3) the false

-16-

documents may cause injury to debtors because they will be required to pay the wrong party and will be forcefully removed from the property by parties with no enforceable interest; and (4) the unlawful instruments put a cloud on title.

We do not need to accept allegations in debtors' FAC (or variations of them) as true when they are contradicted by judicially noticeable documents.[6] The exhibits attached to WFB's MTD shows that WFB obtained a beneficial interest in debtors' DOT as a successor-in-interest due to a merger with World Savings. The note and DOT both refer to the lender as "World Savings Bank, FSB, its successors and/or assignees." The documents show there was no break in the chain of title. Accordingly, there can be no reasonable dispute that World Savings Bank became Wachovia, which was merged into Wells Fargo. WFB was the holder of the note and had a right to enforce the DOT after the merger with World Savings. See Christiansen v. Wells Fargo Bank, N.A., 2013 WL 1832644, at *3 (N.D. Cal. May 1, 2013) ("Many courts have recognized Wells Fargo's interest in

_____

[6] We take judicial notice of the exhibits attached to WFB's request for judicial notice in connection with the MTD and the exhibits attached to debtors' FAC. These documents and their contents are "fact[s] that [are] not subject to reasonable dispute because [they] . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing Co., 2009 WL 656285, at *3 (N.D. Cal. March 12, 2009) (noting that deeds of trust are "part of the public record and are easily verifiable"); Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity.").

the note and deed of trust following World Savings Bank's name change and eventual merger with Wells Fargo.").

Debtors do not challenge the accuracy of the evidence chronicling the succession of Wells Fargo from Wachovia and World Savings.  Rather, they wish to inspect the original note and contend that the written communications received by them contain irreconcilable discrepancies as to the identity of the real party-in-interest to the DOT and note.  However, "California's non judicial foreclosure scheme . . . broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non judicial foreclosure.  Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non judicial foreclosure sale." Lane v. Vitek Real Estate Indus. Grp., 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010).

Debtors cite Glaski, 218 Cal.App.4th 1079, as standing for the proposition that a party may plead a wrongful foreclosure action if the complaint alleges specific facts showing the foreclosure was not initiated by the correct person.  But debtors have not alleged any specific facts that support such a claim and Glaski does not save their cause of action for wrongful foreclosure.  In Glaski, the California Court of Appeal for the fifth Appellate District found:

> [A] borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date.  Transfers that violate the terms of the trust instrument are void under New York law, and borrowers have standing to challenge void assignments of their loans[.]

Glaski, 218 Cal.App.4th at 1083. This narrow holding does not stand for the broad proposition cited by debtors. Moreover, their citation to Glaski, which is a securitization case, is curious given their position that they do not rely on a securitization theory in their FAC.

At the hearing, debtors' counsel argued that the recently published case of Fonteno v. Wells Fargo Bank, N.A., 228 Cal.App.4th 1358 (Cal. App. 2014) also supported their right to challenge the foreclosure sale. There, the California appellate court held that residential mortgage borrowers are entitled to seek the equitable cancellation of a trustee's deed, issued following a nonjudicial foreclosure sale, based on the lender's failure to meet with the borrowers prior to foreclosure as required by the National Housing Act (NHA) regulations which were incorporated into their deed of trust. Nowhere do debtors allege that WFB failed to meet with them prior to foreclosure as required by the NHA nor do they allege that the NHA regulations were incorporated into their DOT. Accordingly, Fonteno is factually distinguishable and does not assist debtors.

Nor can debtors state a claim for wrongful foreclosure based on their allegation that no substitution of trustee was effected before the purportedly new trustee recorded a notice of default in violation of Cal. Civ. Code § 2924(a)(1). The judicially noticeable NOD shows that it was signed by WFB's agent and such delegation is expressly authorized by Cal. Civ. Code § 2924(a)(1) (stating that the notice of default may be filed by the "trustee, mortgagee, or beneficiary, or any of their authorized agents."). See Jenkins, 216 Cal.App.4th at 515

-19-

(agent of beneficiary is authorized to record notice of default); Lane, 713 F.Supp.2d at 1099.

Debtors also assert that the SOT "was invalid because the new trustee attempted to appoint itself as trustee when the Deed of Trust explicitly stated that only the lender could exercise that right." However, the SOT is signed by WFB's "Attorney In Fact." Further, the DOT attached to their FAC states that they "agree[d] that Lender may at any time appoint a successor trustee and that person shall become the Trustee under this Security Instrument as originally named as Trustee."

In the end, none of debtors' allegations state a cause of action for wrongful foreclosure. Even if there were irregularities, debtors would not be entitled to relief because they cannot allege any prejudice. The allegations in the FAC demonstrate that debtors lost their home through nonjudicial foreclosure because they defaulted on the home loan, and not because of WFB's lack of authority or any other irregularities in the foreclosure process. Although debtors argue on appeal that they dispute the default and the amount owed, there are no factual allegations in the FAC to support these legal conclusions. Instead, debtors effectively concede that they were in default in the absence of any factual allegations showing that they had made the required payments on their home loan.

On the tender of payment element, debtors did not even mention this element on appeal. See Padgett v. Wright, 587 F.3d 983, 985 n.2 (9th Cir. 2003) (refusing to consider matters on appeal that were not specifically and distinctly raised and

-20-

argued in appellant's opening brief). When pressed at oral argument on this point, debtors' counsel explained that there are equitable exceptions to the tender rule. For example, tender is not required when the lender has not yet foreclosed and has allegedly violated laws related to avoiding the necessity for a foreclosure. See Pfeifer v. Countrywide Home Loans, Inc., 211 Cal.App.4th 1250, 1280 (Cal. App. 2012). Pfeifer, like Fonteno, involved the violation of the NHA which required a pre-foreclosure face-to-face meeting to discuss alternatives to foreclosure. While we acknowledge there are exceptions to the tender rule under California law, there were no allegations in the FAC that any exception was applicable under these circumstances.

In sum, debtors' FAC not only fails to allege facts that meet the critical elements for a wrongful foreclosure cause of action, but as noted above, it also fails to allege a true irregularity in the proceedings. It therefore follows that the allegations are insufficient to state a cause of action for voiding or cancellation of the recorded TDUS.

**2. Quiet Title**

The FAC also does not state a plausible claim for quiet title. The FAC does not adequately allege that debtors are the rightful owners. The FAC reflects that debtors defaulted on their loan payments and that their property is subject to a DOT. WFB is the beneficiary under the DOT and stands in the shoes of the original lender, World Savings, and has foreclosed on their property.

Further, under California law, "[a] borrower may not . . .

quiet title against a secured lender without first paying the outstanding debt on which the . . . deed of trust is based." Lueras v. BAC Homes Loans Servicing, LP, 221 Cal.App.4th 49, 86 (Cal. Ct. App. 2013). There is no allegation that such a payment was made. Accordingly, this claim is barred as a matter of law.

### 3. Declaratory Relief

In their request for declaratory relief, debtors seek a declaration, among other things, that "no party owns the note, debt, or DOT." Plainly, debtors seek a windfall rather than equitable declaratory relief. Because debtors' request for declaratory relief is dependent upon the previous causes of action which have all been dismissed, declaratory relief is not available on the grounds alleged.

### 4. Remaining Causes of Action

Debtors' FAC also alleged causes of action denominated accounting, right of redemption under Cal. Civ. Code § 2903, and violations of the FDCPA. Debtors, however, make no arguments on appeal regarding these claims or why those causes of action were improperly dismissed. "[W]e cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003); see Padgett v. Wright, 587 F.3d at 985 n.2.

Concerning the violation of the FDCPA, foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of FDCPA. Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1135 (N.D. Cal. 2009). Further, the

-22-

term "debt collector" under the FDCPA does not include creditors, mortgage beneficiaries and servicers, or assignees of a debt. Wise v. Wells Fargo, 850 F.Supp.2d 1047, 1053 (C.D. Cal. 2012). Because WFB owns the loan through the above described name changes and mergers, it is a creditor/originator of debtors' debt and is not a "debt collector." See Esquivel v. Bank of Am., N.A., 2013 WL 682925, at *5-7 (E.D. Cal. Feb. 21, 2013).

In sum, reviewing the dismissal of the FAC de novo, and considering the parties' arguments on appeal, we find no reason to disagree with the bankruptcy court's conclusion that under Civil Rule 12(b)(6) the FAC failed to state legally cognizable causes of action and thus dismissal was proper.

**C.    The Bankruptcy Court Did Not Err In Dismissing the SAC.**

In their opening brief, debtors do not tell us why the bankruptcy court's decision to dismiss their SAC was error. As stated above, we do not consider matters that were not specifically and distinctly raised and argued in their opening brief. Padgett v. Wright, 587 F.3d at 985 n.2.

However, debtors failed to state a claim for relief under the HBOR which took effect on January 1, 2013. Michael J. Weber Living Trust v. Wells Fargo Bank, N.A., 2013 WL 1196959, at *4 (N.D. Cal. March 25, 2013). "Like federal courts, 'California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.'" Id. at *4. The HBOR does not state that it has

-23-

retroactive effect. Id.; see also Sepehry-Fard, 2013 WL 2239820, at *3. Therefore, the bankruptcy court properly dismissed debtors' claims under the HBOR because the facts alleged relate to conduct that arose prior to the HBOR's effective date.

**D. The Bankruptcy Court Did Not Abuse Its Discretion In Dismissing The FAC and SAC With Prejudice.**

We find no error with the bankruptcy court's decision to dismiss the FAC and SAC without leave to amend. Although a bankruptcy court should grant leave to amend liberally, the court does not err in dismissing a complaint if amendment would be futile. Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir 2012). In deciding whether amendment is futile, we are only required to take into account hypothetical amended pleadings containing facts consistent with those already alleged. Swatz v. KPMG LLP, 476 F.3d 756, 761 (9th Cir. 2007). In their arguments on appeal, debtors have failed to set forth any factual allegations that sufficiently state all the elements for wrongful foreclosure or for that matter any cause of action. We thus do not need to decide whether any of the case law cited in their reply brief supports their theories asserted in their FAC or SAC. In short, debtors have not demonstrated that any viable cause of action exists against WFB or the other defendants.

**E. The Bankruptcy Court Did Not Abuse Its Discretion When Making Its Post-Dismissal Rulings.**

Finally, debtors assert that the bankruptcy court abused its discretion by failing to address their emergency request for enlargement of time, and by treating their supplemental response

-24-

in opposition to the second MTD as a motion for reconsideration and then denying it.

The bankruptcy court was within its discretion to consider debtors' supplemental response as a motion for reconsideration when the response was late-filed and received after the bankruptcy court ruled on the merits of the second MTD. At that point, debtors could obtain relief from the ruling by either filing a motion for reconsideration or by filing an appeal. We discern no abuse of discretion in denying the motion when the response failed to meet the requirements for reconsideration under Rules 9023 or 9024 and contained no arguments that would have altered the bankruptcy court's dispositive ruling.

We likewise conclude that the court did not abuse its discretion by failing to grant their emergency request to continue the hearing on the second MTD so that they could hire another attorney. Debtors argue in their reply brief that the effect of the court's ruling was to preclude them from meaningfully amending their SAC to demonstrate the applicability of the HBOR. According to debtors, in this amendment they would allege that WFB as the servicer of their loan had no right to foreclose in its own name. In that event, they contend that a new NOD would be required bringing them within the time frame of the HBOR's applicability, post-January 1, 2013. However, as noted above, debtors failed to allege any violation under Cal. Civ. Code § 2924(a)(1) based on improper party status. Further, debtors' request for an extension of time was made after the bankruptcy court ruled so there was no hearing to continue. We find no abuse of discretion under these circumstances. United

States v. Flynt, 756 F.2d 1352, 1358 (9th Cir. 1985) ("The decision to grant or deny a requested continuance lies within the broad discretion of the [bankruptcy] court and will not be disturbed on appeal absent clear abuse of that discretion.").

## VI.    CONCLUSION

For the reasons stated, we AFFIRM.