333 F.2d 89
 WELLS BENZ, INC., a corporation, Dale Benz, Inc., a
corporation, and The Fidelity and Casualty Company
of New York, a corporation, Appellants,
v.
UNITED STATES of America for the Use of MERCURY ELECTRIC
COMPANY, a corporation, and Founders Insurance
Company, a corporation, Appellees.
 Nos. 18435, 18436.
 United States Court of Appeals Ninth Circuit.
 June 2, 1964.
 
 Betts & Loomis, Albert H. Ebright, James A. Williams, Los Angeles, Cal., for appellants.
 Wiseman & Elmore, Aaron Elmore, Beverly Hills, Cal., Anderson, McPharlin & Conners, Kenneth E. Lewis, Los Angeles, Cal., for appellees.
 Before POPE, KOELSCH and BROWNING, Circuit Judges.
 KOELSCH, Circuit Judge.
 
 
 1
 These are two separate suits which were heard together, both here and in the district court. They involve four Miller Act Claims (40 U.S.C. 270a and 270b), prosecuted by Mercury Electric Company (Mercury), a subcontractor, against Wells Benz, Inc. and Dale Benz, Inc. (Wells and Benz), the prime contractors, together with their surety, the Fidelity and Casualty Company of New York. They also include counter-claims asserted by Wells and Benz.[1] The district court rendered judgment for Mercury on three of its claims and against Wells and Benz on all the counter-claims. Only Wells and Benz have appealed.
 
 
 2
 In December, 1958, Wells and Benz, as prime contractors, awarded Mercury, the subcontractor, contracts for the electrical work and equipment on several construction projects of the Federal Government at Point Arguello and Point Mugu, California. There were four jobs, each of which was the subject of a separate contract. They were known as the 'Instrumentation Job,' the 'Photo Tracking Job,' the 'Range Job' and the 'Supply Department Job.' Mercury fully performed the contract for the Range Job, but before the others were completed Wells and Benz ordered it to leave the materials and get off the jobs. Wells and Benz then engaged Dimac Electric Company, who finished the jobs on a cost-plus basis.[2]
 
 
 3
 These suits followed. Charging that Wells and Benz had wrongfully prevented performance of the contracts, Mercury sought damages on the theory of rescission. Wells and Benz admitted they had terminated Mercury's work, but alleged that Mercury had failed to 'live up to the terms and conditions of the subcontract(s)'; they filed counter-claims against Mercury for breach of contract.
 
 
 4
 The case was heard without a jury. At the close of the evidence, the court announced generally that Mercury was entitled to judgment on all its claims except the one relating to the Photo Tracking Job; that Wells and Benz had overpaid Mercury for work on that job and should recover the overpayment; the court further stated that Wells and Benz should take nothing by their counter-claims and directed counsel for Mercury to prepare and submit findings of fact and conclusions of law consistent with its views. At the settlement hearing, however, there was considerable discussion and controversy concerning the basis for the court's decision and the findings that the judge entered were much briefer and somewhat different than the ones proposed by Mercury. On appeal, Wells and Benz vigorously attack these findings on the grounds that they are insufficient to support the judgments, analytically incorrect and clearly erroneous, and above all, 'contrary to the real findings * * * and impressions of the trial court * * *.'
 
 
 5
 A comparison discloses that, aside from dates, job references and monetary amounts, the findings in each suit are substantially the same. Thus, so far as pertinent, those in the Instrumentation Job suit read:
 
 
 6
 '8. On (here appears the date) the Contractor (i.e., Wells and Benz) gave notice * * * to the plaintiff * * * cancelling said subcontract and ordering plaintiff to remove all its personnel from the job and cease further work thereon, but to leave its equipment and materials, and pursuant only to such order, plaintiff complied therewith and ceased further work thereon. Prior to said cessation, plaintiff substantially performed and complied with each and all of the terms, conditions and obligations of said subcontract on its part to be performed and at the time of said notice stood ready, able and willing to complete the performance of the balance of its work under said subcontract.
 
 
 7
 '9. On (here appears the date) plaintiff gave a notice in writing to contractor declaring a rescission of said subcontract, on the grounds among others as follows: '(a) Prevention of performance on the part of the contractor in peremptorily ordering plaintiff off the job; '(b) * * *
 
 
 8
 '10. At the time of the termination by contractor of said subcontract, there was and is due, owing and unpaid to plaintiff, after allowing full credits to the defendants for payments made by them, or either of them, thereafter to material suppliers and after allowing for and deducting any and all other credits and offsets to which they, or either of them, were, or might be, entitled, a balance of ( ) Dollars for the work and materials delivered by plaintiff on the basis of the contract price * * *. The following Conclusions of Law, insofar as they may be considered Findings of Fact, are so found by this court to be true in all respects * * *
 
 
 9
 'Conclusions of Law:
 
 
 10
 '4. The third party plaintiffs and counter-claimants are not entitled to any judgment whatsoever on the third party claim or cross-claim against third party defendants * * *.'
 
 
 11
 We agree with Wells and Benz that the judgments cannot be sustained unless these findings clearly reflect that Wells and Benz were not justified in preventing Mercury from performing the contracts. That is the gist of Mercury's claims and the rule is well settled that a claim '* * * may not be upheld as to any item that is not supported by definite findings of fact extending to all essential issues * * *.' United States v. Seminole Nation, 299 U.S. 417, 422, 57 S.Ct. 283, 287, 81 L.Ed. 316 (1937). But we reject Wells and Benz' thesis that these findings are fatally deficient. We refer especially to Finding No. 8. As already noted, the court therein stated (a) that Wells and Benz stopped Mercury's work; (b) that up to that time Mercury had substantially performed and complied with its contract, and (c) that Mercury stood ready, able and willing to complete the performance of the balance of its work under said contract. These three findings are tantamount to and require the conclusions that Wells and Benz' act was not warranted and afforded Mercury just cause to treat the contracts at an end.
 
 
 12
 True, they do not state that any party had breached the contracts, and that issue was basic, both to Mercury claims and Wells and Benz' counter-claims; but the lack of an express statement does not necessarily constitute a vital omission, for the rule in this court, as well as in other jurisdictions, has long been that '* * * whenever, from facts found, other facts may be inferred which will support the judgment, such inferences will be deemed to have been drawn. The findings of fact by a trial court must receive such a construction as will uphold, rather than defeat, its judgment.' Clyde Equipment Co. v. Fiorito, 16 F.2d 106, 107 (9th Cir.1926); Carr v. Yokohama Specie Bank, Inc., 200 F.2d 251, 255 (9th Cir.1952; 5 Am.Jur.2d, Appeal and Error, 844 at p. 288 (1962). And in the cases at bar, the answer to the question who was at fault can fairly be determined from the facts the court did declare.
 
 
 13
 Substantial performance is performance. Musto Sons-Keenan Co. v. Pacific States Corp., 48 Cal.App. 452, 458, 192 P. 138 (1920). With reference to a building contract, it does imply something less than a strict and literal compliance with the contract provisions but fundamentally it means that the deviation is unintentional and so minor or trivial as not 'substantially to defeat the object which the parties intend to accomplish.' Connell v. Higgins, 170 Cal. 541, 556, 150 P. 769, 775 (1915).[3] Similarly and consistent with the rule governing contracts generally, a building contract may not be repudiated or unilaterally terminated by one party simply because the other is in default; rather, the party may treat his own obligation at an end only if the other's breach is so gross that the very object of the contract is defeated, (United States v. Southern Construction Co., 293 F.2d 493, 498 (6th Cir.1961); Murphy v. Sheftel,121 Cal.App. 533, 9 P.2d 568, 571 (1932); United States Plywood Corp. v. Hudson Lumber Co., 113 F.Supp. 529, 534 (D.C.S.D.N.Y.1953); Restatement, Contracts, 274 (1932); 12 Am.Jur. Contracts, 440, p. 1020 (1938); 13 Am.Jur. (2d) Building etc. Contracts, 101 at p. 97 (1964)) and the type of variation which is contemplated by a finding of substantial performance is not of the latter character.[4]
 
 
 14
 Although the doctrine of substantial performance is customarily applied to a completed contract,[5] it does not follow the district court's conclusion must be overturned on that account. We are persuaded the district court applied the term by analogy and, as we have before noted, we are able to supply the inference that the contract was wrongfully terminated from the finding of substantial performance.
 
 
 15
 Finding '8' likewise constituted a sufficient determination of all issues tendered by the counter-claims for the validity of those claims, and the incidental matter of damages depended upon the lien on the policy by levy upon it as Mercury's failure to substantially perform the contracts. Manifestly, the implied finding that Wells and Benz had wrongfully terminated Mercury's performance - the issue central to Mercury's cases-- necessarily extended to Wells and Benz' counter-claims and was also dispositive of them. Wells and Benz' expenditures in completing the jobs after they had terminated the contract with no finding justifying termination when Mercury had (as the court found) substantially performed and was ready, willing and able to complete the job was entirely Wells and Benz' own undertaking and not chargeable to Mercury. As this court has declared, '* * * It is (not) necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negative each rejected contention.' Carr v. Yokohama Specie Bank, supra, 200 F.2d at p. 255.[6]
 
 
 16
 Since this is not an instance where the court's formal findings on a material issue were 'hopelessly inadequate and insufficient' as Wells and Benz contend, we need not determine whether the record itself provides a cure or whether a new trial would be required. And we must decline Wells and Benz' entreaty to consider those findings in the light of the court's remarks during the trial and again at the settlement hearing concerning several of Mercury's proposals. That inquiry, says Wells and Benz, will show that the formal findings 'do not reflect the real findings and impressions of the trial judge throughout the course of the trial.' But here, after permissible construction, the findings are clear; it is well settled that an appellate court may not refer to a memorandum opinion for the purpose of impeaching findings[7] (United States v. Esnault & Pelterie, 299 U.S. 201, 206, 57 S.Ct. 159, 81 L.Ed. 123 (1936); Crocker v. United States, 240 U.S. 74, 78, 36 S.Ct. 245, 60 L.Ed. 533 (1916); Stone v. United States, 164 U.S. 380, 383, 17 S.Ct. 71, 41 L.Ed. 477 (1896); Plastino v. Mills, 236 F.2d 32, 35 (9th Cir.1956)), and the same rule, in our estimation, applies with particular force to oral observations and comments. 'Often a strong impression that, on the basis of the evidence, the facts are thus-and-and-so gives way when it comes to expressing that impression on paper.' United States v. Forness,125 F.2d 928, 942-943 (2d Cir. 1942), cert. denied, sub nom. City of Salamanca et al. v. United States, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764.[8]
 
 
 17
 The final point relates to an item of $7,007.68, which constituted part of the counter-claim in the 'Instrumentation Job' action. The sum represented the cost of materials delivered to the job site after Mercury had left and which Wells and Benz' surety admittedly paid. In this action the court awarded Mercury $6,000 damages but, as indicated earlier, simply rejected Wells and Benz' counter-claim without any findings. We believe this was error.
 
 
 18
 However, we do not say that the finding should have been favorable to Wells and Benz. The record is unclear just who ordered the materials; so far as we can ascertain Wells and Benz adduced no proof on the matter and Mercury's answer, which appears in response to some interrogatories, is at best equivocal. There are decisions to the effect that the absence of a finding on a material issue is deemed a finding adverse to the party having the burden of its proof (Switzer Bros. Inc. v. Locklin, 297 F.2d 39, 45 (7th Cir.1961), cert. denied, 369 U.S. 851, 82 S.Ct. 934, 8 L.Ed.2d 9; Container Patents Corp. v. Stant, 143 F.2d 170, 172, cert. denied, 323 U.S. 734, 65 L.Ed. 71, 89 L.Ed. 588 (7th Cir.1944)), and here there is evidence from which the court might readily have concluded Wells and Benz, rather than Mercury had placed the orders. But assuming that the obligation rested upon Mercury, the end result in this instance would be no different than it now is, for the materials were delivered to and used on the job, and there is no proof that their value was less than their cost. Mercury's net recovery, if the price of these materials had been allowed Wells and Benz under the counter-claim, would not have been affected, since Mercury would have been entitled to a correspondingly larger gross which, in turn, would be reduced by the counter-claim. As Mercury's counsel say, in brief: 'It washes itself out.'
 
 
 19
 The judgments are affirmed.
 
 
 
 [1]
 Wells and Benz brought into the suits as a defendant to several counter-claims Founders Insurance Company, a surety for Mercury. Wells and Benz admitted liability on one of the claims but asked that the debt be applied as an offset against their counter-claims
 
 
 [2]
 By the counter-claims Wells and Benz sought damages in an amount allegedly paid or incurred by them to Dimac for completing the jobs
 
 
 [3]
 Here the contracts were executed and were to be performed in California. Thus, we resort to the substantive law of that state to determine the rights and duties of the respective parties. This is proper in a Miller Act case prosecuted in a federal court. Continental Casualty Co. v. Schaefer, 173 F.2d 5, 7-8 (9th Cir. 1949); Central Steel Erection Co. v. Will, 304 F.2d 548, 554 (9th Cir. 1962)
 
 
 [4]
 The right of an injured party where the default consists of a mere partial, as opposed to a material, failure of performance is well stated by the Eighth Circuit in the 5th Syllabus (by the court) that heads its opinion in Kauffman v. Raeder, 108 F. 171 (8th Cir. 1901):
 'A breach of an independent covenant, of a covenant which does not go to the whole consideration of a contract, but which is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract, or warrant its rescission by the injured party. The latter is still bound to perform his part of the contract, and his only remedy for the breach is compensation in damages.'
 
 
 [5]
 The reason the substantial performance doctrine is ordinarily applied only to situations where time for completion is past is because until that time the contractor may be able to remedy the trivial defects. But see Winfield Mutual Housing Corporation v. Middlesex Concrete Products and Excavating Corporation, 39 N.J.Super. 92, 120 A.2d 65 (1956) where, as in the instant case, the doctrine was applied in a case involving wrongful termination after part performance
 
 
 [6]
 The trial court did not, as Wells and Benz suggest, overlook their right to have Mercury's recovery reduced because of its failure to strictly perform; while no precise sum is specified as a set-off, the findings recite that '* * * after allowing full credits to the defendants for payments made by them, or either of them, thereafter to material suppliers and after allowing for and deducting any and all other credits and offsets to which they or either of them might be entitled * * *' they are indebted to Mercury in a sum stated
 
 
 [7]
 To be distinguished is the situation when findings are ambiguous. In American Propellor Co. v. United States, 300 U.S. 475, 57 S.Ct. 521, 81 L.Ed. 751 (1937), the Supreme Court held the rule permitting resort to extrinsic evidence and in determining the meaning of statutes or contracts applied equally to findings
 
 
 [8]
 Presumably, Wells and Benz believe that the record will contradict the formal findings. But even if we were to depart from our rule barring reliance on oral observations, nothing is there to alter the conclusion reached by the district court. Specifically as to the issue of time for performance it is apparent that the district court struck it from the case because of numerous delays not attributable to Mercury, plans changes, and time extensions granted. While we are unable to sanction striking the issue of time, since time for performance is material to the issue of breach, still, the court found that Mercury had substantially performed, leading to the inescapable inference that Mercury was performing on time, considering the circumstances. Further, Wells and Benz make much of the court's oral statement that 'both' parties are in the wrong. From this, they would apparently conclude that Mercury was rightfully terminated. But the oral statement is fully consistent with the doctrine of substantial performance which contemplates a breach by both parties-- what Professor Corbin refers to as 'a big breach' by one and 'a little breach' by the other, 3A Corbin, Contracts 709 at p. 339 (1960). In this case the finding of substantial performance was tantamount to finding Mercury's breach was trivial, while Wells and Benz' was large; and (as we have held) a trivial breach is insufficient ground to terminate a contract