**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

JEROME JOHN LOEW,
   *Defendant-Appellant.*

No. 09-30032

D.C. No.
3:07-CR-00085-
WFN

OPINION

Appeal from the United States District Court
for the District of Idaho
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted
December 7, 2009—Seattle, Washington

Filed February 2, 2010

Before: Robert R. Beezer, Ronald M. Gould, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Greg S. Silvey, Silvey Law Office, Kuna, Idaho, for defendant-appellant Jerome John Loew.

Richard A. Friedman (argued), United States Department of Justice, Washington, D.C.; Gary G. Grindler, Deputy Assistant Attorney General, Criminal Division; Lanny A. Breuer, Assistant Attorney General, Criminal Division; James M. Peters, United States Attorney's Office, Boise, Idaho; Thomas E. Moss, United States Attorney, for plaintiff-appellee United States of America.

## OPINION

TALLMAN, Circuit Judge:

Defendant-Appellant Jerome John Loew appeals from his conviction and sentence on eleven counts of interstate harassment, obscene telephone calls, stalking, violation of protection orders, and telephone threats. At sentencing, the district court's upward adjustments and departures resulted in a guideline range of 151 to 188 months. The court sentenced Loew to 180 months. Loew challenges the indictment, jury instructions, and various upward sentencing adjustments and departures. We here examine only Loew's objection to the restraint of the victim upward adjustment; the remainder of Loew's appeal is discussed in a contemporaneously filed

memorandum disposition. We affirm as to all issues presented.

## I

The victims of Loew's crimes were R.S.,[1] a resident of Lewiston, Idaho, and her teenage son. During the relevant period, Loew resided across the Snake River in Clarkston, Washington. R.S. met Loew in October 2005 through her neighbor Michael Tyndall. When she met Loew, R.S., a mother of three, was engaged in a contentious divorce and custody battle.

Loew claimed to be a handyman and contractor and offered to do work on R.S.'s home for a low price. R.S. hired Loew to make some repairs around the house to prepare it for sale. While Loew was working on R.S.'s house, he began listening to her telephone calls and struck up conversations with her regarding her divorce, her disabilities, and her financial problems. Loew became more and more involved in R.S.'s life. During this period, R.S. realized that the work she had hired Loew to do was not getting done and that Loew spent more time talking with her than he did working on the house. She also started receiving obscene telephone calls from Loew at all hours of the day and night and found sexually explicit pictures outside her house. R.S. asked Loew to come over only to work on the house, rather than as a friend, which made him angry. Eventually, she told him not to return at all. At that point, Loew's behavior became even more upsetting to R.S. and she contacted the police. Loew's pattern of stalking, obscene telephone calls, and threats escalated from April 2006, when R.S. first contacted the police, through January 2007. Eventually, he was arrested and charged in federal court.

---

[1]The victim is referred to by her initials to respect her privacy.

Loew was convicted following trial by jury in June 2008. The Presentence Investigation Report ("PSR") presented to the district court before sentencing recommended, among other adjustments not relevant here, a two-level upward adjustment for restraint of the victim. At sentencing on January 15, 2009, the government presented testimony from R.S. and her neighbor Tyndall to support the requested adjustment.

Tyndall lived only a few blocks from R.S. in 2006. On the morning of September 13, 2006, when Tyndall was coming off a three-day methamphetamine binge, Loew spoke with Tyndall and told him to go to R.S.'s house and convince her not to press charges against Loew. In exchange, Loew told Tyndall that he could take some of R.S.'s son's Dexedrine prescription. Later that day, when R.S. was on the phone with a friend, she heard someone come into her house and dump out her purse. When she went to investigate, she saw Tyndall going through the contents of her purse looking for her son's prescription. When Tyndall saw R.S., he grabbed her and forcibly dragged her out to his truck.

In the truck Tyndall told R.S. that "Jerry got first dibs." Tyndall tied her wrists and ankles so she could not get out of the truck. He told her that she needed to tell Loew's attorney that everything she had complained of was a lie and that Tyndall and Loew were prepared to torture her to convince her to recant. He then drove her to Waha Lake, Idaho, where he told her that they were going to meet Loew. Loew never arrived. While at Waha Lake, Tyndall sexually assaulted R.S. After the assault he drove her to a grocery store in Clarkston, Washington, near Loew's home, and called Loew from a pay phone. When Loew did not answer the phone, Tyndall drove them past Loew's home. His car was not in the drive, so they left. When R.S. suggested her friend was likely looking for her at her house because he had been speaking with her on the telephone when she was abducted, Tyndall drove by the house to find out. When they neared R.S.'s house, Tyndall encountered several police vehicles and attempted to speed up to

evade them, however, he was quickly pulled over by the police. Tyndall was arrested and R.S. was freed. Tyndall pled guilty to kidnapping and battery as a result of these events.

At sentencing Tyndall testified that he went to R.S.'s home on September 13, 2006, because Loew told him to threaten R.S. to convince her to drop the charges against Loew. Tyndall claimed that Loew did not specifically ask Tyndall to kidnap or tie up R.S., but Loew did want Tyndall to pressure R.S. and tell her that she wasn't going to win and that Loew would make her life miserable. The district court overruled Loew's objection to the enhancement for restraint of the victim. It determined, by a preponderance of the evidence, that Loew had enlisted Tyndall to intimidate R.S. and had arranged for her to be threatened and kidnapped, which led to the sexual assault. The court adopted the facts as explained in the PSR and found that Loew's inducement of Tyndall's crimes supported the two-level upward adjustment for restraint of the victim.[2]

## II

"We review the district court's interpretation of the Sentencing Guidelines *de novo*, the district court's application of the Guidelines to the facts for abuse of discretion, and the district court's factual findings for clear error." *United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008) (citing *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006)). "Although the Guidelines are only advisory, a material error in calculating the sentencing range is grounds for resentencing." *Id.* (citing *Cantrell*, 433 F.3d at 1280).

---

[2]Because we affirm the sentencing adjustment on the basis of Tyndall's kidnapping of R.S., we do not reach the alternative ground proffered by the district court that the adjustment was proper as a result of an August 10, 2006, incident between Loew and R.S., when Loew reached into R.S.'s vehicle and grabbed her car keys out of her hand.

A district court abuses its discretion when it applies the incorrect legal rule or its application of the correct legal rule is "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.' " *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)). Likewise, a district court's factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Id.* at 1262.

## III

**[1]** A two-point offense level upward adjustment is appropriate when the victim of a crime was physically restrained in the course of the offense. U.S. Sentencing Guidelines Manual § 3A1.3 (2008) [hereinafter USSG or Guideline]. " 'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." USSG § 1B1.1 cmt. n.1(K). Loew challenges the restraint of the victim adjustment imposed as a result of Tyndall's kidnapping and assault of R.S.

**[2]** The relevant conduct for sentencing adjustments includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred . . . in the course of attempting to avoid detection or responsibility for [the offense of conviction]." USSG § 1B1.3(a)(1). Relevant conduct also includes "all harm that resulted from the acts and omissions specified" above. *Id.* § 1B1.3(a)(3). The phrase "resulted from" establishes a causation requirement that is satisfied when the harm was a "direct result" or "flowed naturally" from the defendant's conduct. *United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000) (citation omitted).

**[3]** *Hicks* compared the causation requirement of Guideline section 1B1.3(a)(3) to the concept of proximate cause. *Id.* at 1048-49 (citations omitted). The court, therefore, applied the

doctrine of intervening causes to the concept of relevant conduct under section 1B1.3(a)(3): "losses caused by the intervening, independent, and unforeseeable criminal misconduct of a third party do not 'result[ ] from' the defendant's crime and may not be considered." *Hicks*, 217 F.3d at 1049 (limiting a fraud defendant's adjusted offense level under Guideline section 2F1.1 for the amount of the loss, where an unrelated criminal actor also defrauded the victim bank as it foreclosed on properties originally purchased by Hicks through fraudulently obtained loans).

The district court concluded that Loew induced Tyndall to threaten and kidnap R.S., which led to her being bound and assaulted. This is a factual finding that we review for clear error. *See Garro*, 517 F.3d at 1167; *see also United States v. Lavender*, 224 F.3d 939, 941-42 (9th Cir. 2000) (district court's determination that a co-conspirator's actions were reasonably foreseeable reviewed for clear error). Loew concedes that he induced or caused Tyndall to tamper with a witness in an attempt to avoid responsibility for his crimes and that Tyndall physically restrained R.S.[3] However, he argues that the restraint, kidnapping, and sexual assault were not foreseeable results of Loew's demand that Tyndall threaten and intimidate R.S. Essentially, Loew argues that we should find that Tyndall's conduct was an intervening cause of R.S.'s restraint for which Loew should not be held responsible at sentencing under *Hicks*. *See* 217 F.3d at 1049. We disagree.

---

[3]Under Guideline section 1B1.3 relevant conduct also includes, "in the case of a jointly undertaken criminal activity (. . . whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred . . . in the course of attempting to avoid detection or responsibility for [the offense of conviction]." USSG § 1B1.3(a)(1)(B). We note that Loew and Tyndall were essentially acting in an uncharged conspiracy to prevent R.S. from cooperating in the investigation and prosecution of Loew for the crimes of conviction when Tyndall agreed to threaten R.S. at Loew's request.

**[4]** Because the district court specifically found that Loew induced Tyndall to threaten R.S. to derail the investigation and prosecution of Loew, *Hicks* does not support Loew's claim. Even applying the doctrine of intervening causes from *Hicks*, Loew is responsible for the restraint of R.S. It is foreseeable that threatening and intimidating a victim could lead to restraint of that victim. The fact that the exact form the restraint took in this case (physical binding, kidnapping, and sexual assault) might not have been discussed does not mean it was not foreseeable that Tyndall would be required to physically restrain R.S. to achieve Loew's goal. Furthermore, Tyndall's actions were not truly independent of Loew because they were specifically induced by Loew. The district court's inherently factual determination that Loew induced Tyndall's restraint of the victim was not illogical, implausible, or without support in the record. *See Hinkson*, 585 F.3d at 1262. Because Loew's inducement was a proximate cause of Tyndall's restraint of R.S., and the restraint was induced to cover up Loew's own crimes, the two-point restraint of the victim enhancement was proper.

**AFFIRMED.**