FILED

DEC 15 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   WW-15-1416-JuTaKu |
| ) | |
| JESSICA ARLENE NELSON, ) | Bk. No.   11-12572-MLB |
| ) | |
| Debtor. ) | |
| _____ ) | |
| DARRYL PARKER, ) | |
| ) | |
| Appellant, ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| JESSICA ARLENE NELSON, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on November 17, 2016
at Pasadena, California

Filed - December 15, 2016

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding
_____

Appearances:   Appellant Darryl Parker argued pro se; Marc S.
Stern argued for appellee Jessica Arlene Nelson.
_____

Before:  JURY, TAYLOR, and KURTZ, Bankruptcy Judges.

Memorandum by Judge Jury
Dissent by Judge Kurtz

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

This appeal marks the second occasion in which this case has come before the Panel. In the first proceeding, the bankruptcy court found appellant, Darryl Parker (Mr. Parker), in contempt for violating the § 524[1] discharge injunction and awarded sanctions to appellee-debtor, Jessica Arlene Nelson (Debtor), consisting of $2,048.45 in attorney's fees and costs. Mr. Parker appealed to this Panel. The Panel vacated the judgment and remanded the matter to the bankruptcy court to make findings consistent with the Ninth Circuit's decision in Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006).

On remand, following an evidentiary hearing, the bankruptcy court found the Zilog standards met and entered an order finding Mr. Parker in contempt. The bankruptcy court later entered a judgment awarding Debtor attorney's fees and costs of $17,887.50. Mr. Parker appeals from the order finding him in contempt and the judgment awarding sanctions. For the reasons stated below, we AFFIRM in part and REVERSE in part.

## I. FACTS

### A. Events Leading Up to the First Appeal Decision

In July 2010, Debtor retained Mr. Parker, a personal injury attorney, to represent her on a contingency fee basis in actions involving two auto accidents (Accident Claims) that occurred on March 11 and 12, 2010. The actions were pending when Debtor

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

filed her chapter 7 petition on March 9, 2011. In Schedule B, Debtor listed her interest in the Accident Claims with values unknown. In Schedule C, she took exemptions in the Accident Claims of $21,625 and $525. In Schedule F, she identified Mr. Parker as an unsecured creditor owed $9,000 for "costs for prior representation," which related to his work for Debtor in an unrelated malpractice matter.

On March 29, 2011, Mr. Parker emailed Debtor notifying her that he was aware of her bankruptcy filing and reminding her that she needed to schedule the Accident Claims. Debtor contacted Mr. Parker with questions about how medical treatment out of state would affect her Accident Claims and complained that Mr. Parker had not responded to her multiple requests in April and May 2011.[2] On June 9, 2011, Debtor terminated Mr. Parker's employment.

Six days later, on June 15, 2011, Mr. Parker wrote a letter to Berkley North Pacific (BNP), one of the insurance companies involved, which stated: "Please be advised this office no longer represents the [D]ebtor in regards to the March 11, 2011, motor vehicle accident." Mr. Parker also asserted that he had an attorney's lien of $5,000 plus costs against any proceeds from this claim. The letter did not state the amount of the fees owed or whether the lien was for work done before or after the bankruptcy petition was filed. Mr. Parker sent this letter

---

[2] Mr. Parker asserts that he had numerous telephone conversations with Debtor after March 28, 2011, while Debtor asserts that March 28, 2011, was the last time that she communicated with him.

-3-

approximately three months after the petition date and one month before the discharge date, while the automatic stay of § 362(a) was in effect.[3]

On July 18, 2011, Debtor received her discharge and on July 22, 2011, the case was closed and the Accident Claims were deemed abandoned to Debtor. Due to the discharge, the debt of $9,000 owed to Mr. Parker was discharged along with the debt associated with the Accident Claims that Mr. Parker accrued prepetition. The bankruptcy court mailed Mr. Parker, who was on the court's mailing matrix, a copy of the Official Form 18 discharge order. Although Mr. Parker disputed receiving this notice, he acknowledged that the address on the mailing matrix was correct.

On March 1, 2012, Mr. Parker sent a second letter to BNP referring to a conversation he had with a representative of the office regarding Debtor's discharge:

> Yesterday, February 27, 2012 we received a letter from you alleging that our lien was discharged in bankruptcy and that our lien was satisfied. I have no idea where you obtained this information. We have a lien for services rendered for Ms. Nelson in a matter that was not discharged in bankruptcy. I do not know the source of your information or what code section you are relying on to make a claim that our lien was discharged in bankruptcy.

Mr. Parker threatened action against BNP if it gave effect to the discharge order by releasing all the settlement proceeds to Debtor.

---

[3] Although there were two Accident Claims that were defended by two insurance companies, the evidence in the record pertains only to the claim assigned to BNP. There is no evidence with respect to the other claim.

-4-

A July 9, 2012 email exchange between Debtor and a BNP representative indicated that Mr. Parker continued to assert the validity of his attorney's lien against the proceeds at that time.

After her discharge, Debtor attempted to settle the Accident Claims but learned that the pending settlements of the claims could not be finalized until Mr. Parker's liens were resolved. Debtor's counsel, Mr. Stern, contacted Mr. Parker twice by letter informing him that his attorney's liens violated the automatic stay and the discharge injunction. The first letter was dated November 6, 2012, and another letter dated December 6, 2012, followed. The second letter was sent by certified mail, and the signed receipt was returned to Mr. Stern's office showing that it had been delivered. Mr. Parker did not respond to either letter.

On February 6, 2013, Debtor filed a motion seeking to hold Mr. Parker in contempt for violation of the discharge injunction and to declare his attorney's liens void. In a supporting declaration, Debtor stated that Mr. Parker did not work on the Accident Claims after she filed her bankruptcy petition. Mr. Stern served Mr. Parker by mail with the motion for contempt and notice of hearing at the address listed for Mr. Parker on the court's mailing matrix. Mr. Parker did not respond.

On March 8, 2013 — the day of the scheduled contempt hearing — Mr. Parker went to the bankruptcy court, but he was advised that the hearing was vacated since he had not responded and that the matter had already been ruled upon.

The bankruptcy court entered the contempt order against

-5-

Mr. Parker by default on March 26, 2013, finding him in contempt and voiding his asserted attorney's liens. The order further provided that "Debtor may serve a copy of this Order on any insurance company or attorney for the purpose of informing them so, and for the purpose of authorizing them to deal with the Debtor or personal injury counsel without the interference of Darryl Parker." The court struck out the portion of the order which awarded $1,000 in attorney's fees for the contempt and replaced it with the following: "Should counsel believe attorney's fees are appropriate, he may bring a separate motion with appropriate evidentiary support as to the amount of fees incurred." Neither the order nor a separate document contained the bankruptcy court's findings of fact or conclusions of law on the contempt.

On April 15, 2013, Mr. Stern filed a motion seeking the approval of his attorney's fees in the amount of $2,048.45 incurred for bringing the motion for contempt. This motion was noticed for hearing on May 31, 2013, and Mr. Stern again served the motion and notice of hearing on Mr. Parker at the address listed on the mailing matrix.

On May 6, 2013, about six weeks after the contempt order was entered, Mr. Parker filed a motion to set aside the order. He later filed an opposition to the fee motion. In his motion to vacate, Mr. Parker stated that he learned of the motion for contempt before the March 8, 2013 hearing date, but when he arrived at court he discovered that the hearing had been stricken and the motion granted due to his failure to respond.

In late May 2013, the bankruptcy court heard Mr. Parker's

-6-

motion and his objection to Mr. Stern's request for attorney's fees. The court denied his set-aside motion, granted the requested fees and costs, and entered a judgment and order consistent with its ruling on July 8, 2013.

On July 12, 2013, Mr. Parker filed a notice of appeal (NOA) of the judgment and order denying his motion to set aside the order of contempt and awarding attorney's fees. He filed an amended NOA on July 17, 2013, which included the court's rulings on March 26, 2013, and July 8, 2013.

On July 11, 2014, the Panel issued a Memorandum Decision and on August 4, 2014, a final order and judgment was entered. The BAP vacated the underlying contempt order and judgment and remanded the matter to the bankruptcy court, instructing the court to make findings of fact and conclusions of law pertaining to the two-part test set forth in Zilog necessary to hold a party in contempt for violation of the discharge injunction.

**B. The Decision on Remand**

**1. The Evidentiary Hearing**

On remand, the bankruptcy court held an evidentiary hearing on March 16, 2015, to determine whether Mr. Parker's conduct met the two-part test for contempt under Zilog. We briefly summarize the relevant testimony elicited at the hearing.

Debtor testified that she had been paid $40,000 on her two Accident Claims but indicated that funds were still being held in trust for payment of Mr. Parker's asserted liens.

Mr. Parker testified that on March 8, 2013, the day he appeared for the hearing on Debtor's motion for contempt, he had knowledge that Debtor had received a discharge because he went

to the clerk's office and saw a copy of the discharge order. He also admitted that the address listed on the court's mailing matrix to which the discharge order and Mr. Stern's letters were sent was accurate and that he had received at least the letters. However, he testified that he searched his office, but, due to some clerical issues in his office, he had not actually seen the letters until after the contempt motion was filed.

Mr. Parker also testified that he continued working on the Accident Claims until Debtor terminated him, and that the attorney's liens were for a combination of prepetition and postpetition work. However, he did not testify about the total amount of his fees nor did he provide specific evidence on the amount of work he did prepetition versus postpetition.

After closing arguments, the bankruptcy court asked Mr. Parker whether it was "unequivocal" that he was aware that Debtor was issued her discharge.

> MR. PARKER: I was on notice that there was a discharge order when [Mr. Stern] filed the motion for contempt. When I came into court that day when the contempt hearing was supposed to be had, as of that day -- because when I learned that the hearing was not scheduled because I hadn't responded, I went down to the clerk's office. And as of that day, I knew that the debtor had been discharged.

The court then asked Mr. Parker if he was still asserting the lien: "[A]s we speak, are you not?" Mr. Parker responded that he still did not know whether the Accident Claims were discharged and then later clarified what he meant was: "[A]s we sit here right now, I still do not know that my claim for fees regarding the automobile accident was discharged in bankruptcy." Mr. Parker further stated that he understood he was owed pre-

and postpetition fees. The bankruptcy court informed Mr. Parker that it did not have any sort of clarity on what fees were incurred prepetition and what fees were incurred postpetition. The court then took the matter under advisement.

**2. The Bankruptcy Court's Ruling on Contempt**

On April 10, 2015, the bankruptcy stated its findings of fact and conclusions of law on the record.

The court observed that under Washington law, Mr. Parker did not have a lien against the auto accident settlement proceeds until the insurance company received his letter asserting the lien. Since the letter was sent on June 15, 2011, after the petition date and prior to the entry of a discharge order and while the case was open, the court found the lien void as it was in violation of the automatic stay. § 362(a)(4)-(6). The court noted that under the holding in Schwab v. Reilly, 560 U.S. 770, 774 (2010), the Accident Claims were property of the estate at the time Mr. Parker sent the letter since Debtor had claimed only a partial exemption in the asset.

The bankruptcy court also found that Mr. Parker's prepetition unsecured claim for fees associated with the Accident Claims was discharged on July 18, 2011, and that he had not established the amount of any claim for postpetition services.

Finally, the bankruptcy court found Mr. Parker in contempt under the two-part test set forth in Zilog. On the knowledge requirement, the court found that Mr. Parker had knowledge of the discharge injunction as of March 8, 2013, when he arrived at court for a hearing on the contempt motion and learned about the

discharge order. The court further observed that unlike the creditors in Zilog who stayed their action pending the bankruptcy court's resolution of the issue, Mr. Parker continued the action "with his continued assertion of the lien up to and at the time of the hearing." The bankruptcy court found that Mr. Parker's continued assertion of the lien continued to impair the settlement in Debtor's exempt Accident Claims by causing a portion of the settlement funds to be held in trust. The court reiterated that despite Mr. Parker's testimony that he had been on notice of the discharge order as of March 8, 2013, he still asserted the lien up until the evidentiary hearing which was two years later. The bankruptcy court thus concluded that the standards in Zilog for holding Mr. Parker in contempt were met.

On April 24, 2015, the bankruptcy court entered the order holding that Mr. Parker's attorney's liens were void and finding him in contempt of the discharge order. The court further ordered that Debtor was entitled to actual damages, including attorney's fees incurred in the matter after March 8, 2013, but required that Debtor's counsel move separately to establish the amount of the damages.

**3. The Bankruptcy Court's Award of Attorney's Fees**

On July 6, 2015, Mr. Stern moved for attorney's fees and costs in the amount of $17,887.50. Attached to the motion were Mr. Stern's time records showing that he had spent 43.10 hours at $400 an hour for a total of $17,240.00 and that his assistant spent 4.90 hours at $125 an hour for a total of $612.50.

Mr. Parker objected to the fees on several grounds. He re-argued the bankruptcy court's finding of contempt, asserting

-10-

that there was no evidence that he made any effort to collect on the debt that Debtor owed him after he learned of the discharge on March 8, 2013. He further argued there was no evidence that he knew the bankruptcy discharge applied to the debt for work he had done on the Accident Claims after the bankruptcy case was filed. Mr. Parker also challenged Mr. Stern's hourly rate. Last, Mr. Parker asserted that Mr. Stern was not entitled to attorney's fees because his efforts after March 15, 2013, were not for the purpose of protecting Debtor or enforcing the discharge order by demonstrating contempt but were motivated solely by his desire to maintain an award of attorney's fees and an order of contempt.

Debtor argued in response that the bankruptcy court had already found Mr. Parker in contempt and asserted that the award of reasonable fees was appropriate.

In reply, Mr. Parker asserted that Mr. Stern was not entitled to fees incurred on the previous appeal because Debtor was not the prevailing party based on the holding in Am. Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095, 1097 (9th Cir. 2015) (overruling Sternberg v. Johnston, 595 F.3d 937 (9th Cir. 2010) and construing § 362(k) to be a fee-shifting statute authorizing an award of attorney's fees incurred in prosecuting an action for damages under the statute, including fees incurred in successfully defending the judgment on appeal).

On August 6, 2015, the bankruptcy court held a hearing on the matter. The court found that the attorney's fees and costs resulting from the violation of the discharge injunction were

those incurred between March 8, 2013, and April 24, 2015, the date the contempt order was entered and the contemptuously asserted lien voided, but excluding any fees during that period which were associated with pursuing the damages based on attorney's fees. The court further found that the costs and attorney's fees (excluding fees solely related to seeking the fee award) incurred within the period were reasonable and could not have been mitigated by Debtor. Finally, the court allowed Mr. Stern to supplement the record to support his hourly rate of $350-$400 an hour.

On November 19, 2015, the bankruptcy court ruled on the sanction request. The court found that the fees incurred by Mr. Stern on Debtors' behalf through April 24, 2015, the date of the contempt order, were reasonable. The court also found that the Mr. Stern's rate was reasonable in the current local market for someone with his experience. The court briefly addressed whether the case of Schwartz-Tallard was applicable to fees awarded for violation of the discharge injunction and indicated that it was inclined to request further briefing on that issue. Mr. Stern however waived the issue.

On December 4, 2015, the bankruptcy court entered a judgment and order awarding sanctions to Debtor consisting of $17,887.50 in attorney's fees and costs. This appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

In his amended opening brief, Mr. Parker articulates eight issues for review in this appeal.  We distill them down to the following three:

A.  Did the bankruptcy court err when it determined that Mr. Parker had knowledge of the discharge injunction and that it was applicable to his claim?

B.  Did the bankruptcy court err when it determined that Mr. Parker willfully violated the discharge injunction?

C.  Did the bankruptcy court err when it awarded Debtor sanctions which included attorney's fees that were incurred for defending the order of contempt in the first appeal?

## IV.  STANDARDS OF REVIEW

"We review the decision to impose contempt for an abuse of discretion, and underlying factual findings for clear error." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003); Rediger Inv. Servs. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns), 503 B.R. 726, 731–32 (9th Cir. BAP 2013).

The bankruptcy court's findings regarding Mr. Parker's knowledge of the discharge injunction and willful violation are findings of facts reviewed for clear error.  A factual finding is clearly erroneous when it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010).

An award of sanctions under § 105(a) is reviewed for abuse of discretion.  Nash v. Clark Cnty. Dist. Atty's. Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012).  In

-13-

determining whether the bankruptcy court abused its discretion we first determine de novo whether the trial court identified the correct legal rule to apply to the relief requested and then, if the correct legal standard was applied, we determine whether the court's application of that standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Loew, 593 F.3d at 1139.

# V. DISCUSSION

## A. Finality and Appealability of the Contempt Order

Initially, Debtor contends that Mr. Parker's appeal of the contempt order, which was entered on April 24, 2015, was untimely. Accordingly, we consider whether this order constitutes a final, appealable order.

"A disposition is final if it contains 'a **complete** act of adjudication,' that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter.'" Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1120 (9th Cir. 2007) (emphasis in original). "'Evidence of intent consists of the [o]rder's content and the judge's and parties [sic] conduct.'" Id. at 1121. The Ninth Circuit has recognized that "'[w]hile no formal words of judgment are necessary to convey finality,' there must be **some** dispositive language sufficient to put the losing party on notice that his **entire** action - and not just a particular motion or proceeding within the action - is over and that his next step is to appeal." Id. (emphasis in original).

Here, the April 24, 2015 contempt order did not "clearly"

-14-

evidence the bankruptcy judge's intent that it be final. Rather, it gave exactly the opposite notice because the court ordered that Debtor was entitled to actual damages including attorney's fees incurred after March 8, 2013, and ordered Mr. Stern to move separately to establish the amount of the damages. Accordingly, the ruling on its face demonstrated that the court contemplated further action. See Id. (citing Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co., 117 F.3d 432, 434 (9th Cir. 1997) ("The rulings on their face demonstrate that the court contemplated further action, and we will not venture to guess whether the court subjectively intended otherwise.")).

In addition, the Ninth Circuit follows a "pragmatic approach" to finality in bankruptcy. In re Brown, 484 F.3d at 1121. "'[A] complete act of adjudication need not end the entire case, but need only end any of the interim disputes from which an appeal would lie.'" Id. On this point, Brown is instructive. There, the debtor filed an adversary proceeding alleging that the creditor had violated the stay. On cross-motions for summary judgment, the bankruptcy court ruled from the bench in favor of the creditor and, later that same day, signed a minute entry stating that the creditor's motion was granted and debtor's motion was denied, and taking under advisement a related motion for sanctions. The debtor filed an appeal nearly three months later when the court entered judgment awarding sanctions against his counsel. The district court dismissed the appeal from the summary judgment as untimely, and debtor appealed. The Ninth Circuit reversed finding, among other things, that the two motions — the one for summary

-15-

judgment and the other for sanctions — were intertwined and that the motion for sanctions could not be characterized as involving "'discreet issue[s]'" apart from the summary judgment motion.

Similarly, Debtor's motion for contempt and later filed motion for sanctions were intertwined. Debtor's motion for sanctions, which was based on the finding of contempt, simply cannot be characterized as involving "'discrete issue[s]'" apart from the contempt order itself. See Id. at 1122 (citing Schulman v. State of Cal. (In re Lazar), 237 F.3d 967, 985 (9th Cir. 2001) ("[B]ankruptcy court order is final, and thus appealable, where it (1) resolves and seriously affects substantive rights and (2) finally determines discrete issue to which it is addressed.")).

In the end, the Brown court noted: "Lest litigants be misled about when their time to appeal begins to run, there must be some 'clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as it is concerned, is the end of the case.'" 484 F.3d at 1222. Because there is not that kind of clarity here, the April 24, 2015 contempt order cannot be deemed a final, appealable order.

Thus, the contempt order became final on December 4, 2015, when the bankruptcy court entered the judgment and order on sanctions, and Mr. Parker's appeal from that order was timely. See In re Webb, 742 B.R. 665, 2012 WL 2329051, at *5 (6th Cir. BAP Apr. 9, 2012) (Table). Accordingly, we have jurisdiction over the appeal from the contempt order and the subsequent judgment regarding the award of fees.

**B.    The Merits**

In a chapter 7 case, with exceptions not relevant here, "[t]he [bankruptcy] court shall grant the debtor a discharge." § 727(a).  When entered, that order "discharges the debtor from all debts that arose before the date of the [bankruptcy filing]."  § 727(b).  Section 524(a)(2) states that a discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]  Therefore, once Debtor received her discharge, § 524(a)(2) operated as an injunction to enjoin creditors from collecting a prepetition debt.

A party who knowingly violates the discharge injunction under § 524(a)(2) can be held in contempt under § 105(a). In re Zilog, 450 F.3d at 1007.  To prove a sanctionable violation, the debtor has the burden of showing that the creditor "'(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction.'"  Id.; see also In re Nash, 464 B.R. at 880 (quoting Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1205 n.7 (9th Cir. 2008)).  This is so even if the creditors did not specifically intend to violate the discharge injunction.  See In re Dyer, 322 F.3d at 1191.

Clear and convincing evidence must be presented to show that a creditor has violated the discharge injunction and that sanctions are justified.  In re Zilog, 450 F.3d at 1007; In re Nash, 464 B.R. at 880.  Clear and convincing proof "has been defined as 'between a preponderance of the evidence and

-17-

proof beyond a reasonable doubt.'" Singh v. Holder, 649 F.3d 1161, 1165, n.7 (9th Cir. 2011). It requires that the evidence presented by the party bearing the burden must be "highly probable or reasonably certain." Black's Law Dictionary (10th ed. 2014).

The record after remand does not convince us that Debtor proved the Zilog elements by clear and convincing evidence. With respect to the knowledge requirement, the bankruptcy court found that Mr. Parker had knowledge of the discharge order at least by March 8, 2013.[4] However, standing alone, knowledge of the discharge injunction is not enough. In this circuit, there must be evidence showing that the alleged contemnor was aware of the discharge injunction **and** aware that it applied to his or her claim. Emmert v. Taggart (In re Taggart), 548 B.R. 275, 288 (9th Cir. BAP 2016). "Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's subjective belief, even an unreasonable one." Id.

Here, the bankruptcy court never made an explicit finding regarding Mr. Parker's knowledge about the applicability of the discharge injunction to his fee claims nor is it apparent that it conducted the necessary fact-based inquiry. On appeal, we cannot assume that Mr. Parker was aware of the applicability of the discharge injunction to his fee claims. Indeed, Mr. Parker

---

[4] Although there are numerous events prior to this date that may have shown Mr. Parker's knowledge of the discharge injunction, the bankruptcy court did not rely on those events when making its decision.

-18-

continues to assert on appeal that he did not know whether the discharge injunction applied to his fees for his postpetition work.

He asserted throughout this case that his liens were based on both pre and postpetition fees. Therefore, the scope of the discharge injunction with respect to some of the fees was at issue. Further, although Mr. Parker did not prove that he had incurred postpetition fees, his failure to do so does not show by clear and convincing evidence that he subjectively knew that the discharge injunction applied to his claims.[5] While we can only surmise due to the lack of findings, the bankruptcy court apparently found the knowledge requirement was met either because it concluded that notice of the discharge injunction was sufficient notice of its scope or, alternatively, the court improperly shifted the burden to Mr. Parker to disprove the applicability of the discharge order to his claims; i.e., prove that they were postpetition claims.

The second Zilog element requires that Mr. Parker intended the actions which violated the discharge injunction. The bankruptcy court found that intent was shown because Mr. Parker failed to release his liens after he learned of the discharge on March 8, 2013. However, there is no evidence in the record showing that Mr. Parker affirmatively sought to enforce his liens after that date. Instead, his testimony was that he thought the bankruptcy court's order finding him in contempt

---

[5] Although the bankruptcy court stated Mr. Parker did not delineate his pre- and postpetition work, it did not make a finding that no work was done postpetition.

-19-

voided the liens and thus, implicitly, there was nothing left for him to do to remedy a discharge violation.

The postpetition creation of a lien violates § 362(a)(4) and renders any such lien void as a matter of law. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992) (actions taken in violation of the automatic stay are void, not voidable). A close examination of the March 26, 2013 contempt order shows that the bankruptcy court voided the liens because Mr. Parker obtained them in violation of the automatic stay of § 362. Accordingly, Mr. Parker could not be faulted for failing to affirmatively release his liens after those liens were voided by bankruptcy order. Accordingly, the bankruptcy court's finding that Mr. Parker continued to violate the discharge injunction by failing to release his liens a full two years after he had knowledge of the discharge order is not plausible or supported by inferences drawn from the facts in the record.

In sum, on this record Debtor did not meet her burden of showing by clear and convincing evidence that the Zilog requirements were met for holding Mr. Parker in contempt. Due to our conclusion, it is unnecessary for us to address the issues raised pertaining to the sanctions.

## VI. CONCLUSION

Because appellant's brief did not address the part of the order on appeal which voided the attorney's lien as a violation of § 362, that part of the order is affirmed. Therefore, we AFFIRM in part and REVERSE in part.

DISSENT BEGINS ON NEXT PAGE

KURTZ, Bankruptcy Judge, Dissenting.

Unlike my colleagues, I perceive no reversible error. The bankruptcy court cited In re ZiLOG, Inc. and correctly stated and applied ZiLOG's legal standard for the imposition of discharge violation contempt sanctions. Moreover, the bankruptcy court expressly found that Nelson had satisfied both elements of the ZiLOG test, and these findings were not clearly erroneous. They were supported by the record when viewed in its entirety, and they were logical and plausible. Accordingly, I respectfully dissent.

While the majority decision amply sets forth the relevant facts, I reiterate certain facts to highlight their importance. This is the Panel's second appellate review of this matter. In 2014, the Panel vacated the bankruptcy court's prior contempt and sanctions rulings due to insufficient findings, and we remanded so the bankruptcy court could make findings consistent with In re ZiLOG, Inc. Yet our 2014 disposition went further than that. It also vacated the bankruptcy court's ruling declaring Parker's attorney fees liens void for violating the § 362 automatic stay.

Consequently, between the date of our 2014 decision and the date of the bankruptcy court's order on remand in April 2015, there was no order in effect declaring Parker's liens void. In fact, the bankruptcy court found that Parker continued to assert his liens up through the time of the bankruptcy court's April 2015 ruling and that, as a result of this assertion, a portion of the proceeds from the settlement of Nelson's accident claims continued to be withheld from her. This finding is a reasonable

-1-

inference based on the evidence in the record. Also, it is undisputed that a portion of Parker's liens were for prepetition attorney services. Indeed, Parker admitted during his evidentiary hearing testimony that the liens were for a combination of prepetition and postpetition work.

The bankruptcy court determined on remand that, as of March 8, 2013 – the day Parker arrived at the court for a hearing on Nelson's contempt motion – he knew that the discharge injunction was applicable to his efforts to collect his prepetition attorney fees. As reflected in the record, by that date, Parker knew: (1) his client had filed bankruptcy; (2) she had listed him as a creditor; (3) his contract for legal services predated the petition date; (4) some of his services were rendered before the petition date; (5) he perfected his attorney fees liens after the petition date; (6) his client had received a discharge; (7) for that reason, the insurance company wanted to settle his client's claims without honoring his liens; (8) he had threatened the insurance company with legal action if they settled the claims without honoring his liens; (9) he had received and reviewed two letters from Nelson's bankruptcy attorney informing him that his conduct violated the discharge injunction; (10) he had received and reviewed Nelson's motion for contempt; and (11) he learned that, because he had not objected to the contempt motion, the court had granted the motion without a hearing. Based on these facts, the bankruptcy court's finding against Parker on ZiLOG's knowledge element was logical, plausible, and supported by the record.

The court further determined that, both before and after

-2-

March 8, 2013, Parker violated the discharge injunction by continuing to maintain that his debt for prepetition legal services was not discharged and secured by liens he asserted in violation of § 362 but never rescinded. On May 31, 2013 – some eight weeks after the March 8 date – Parker returned to court to ask the bankruptcy court to set aside the order holding him in contempt and declaring his lien void. Even though he acknowledged that he had been retained prepetition, had performed legal services prepetition and had sent the notice of his liens to the insurance company postpetition, he continued to argue that the liens were proper and that his fees were not discharged in Nelson's bankruptcy case. After considering Parker's argument, the court once again informed him that his purported liens were void due to the § 362 stay. The court further explained that an attorney's debt for prepetition services based upon a prepetition retention agreement not assumed in bankruptcy would be discharged in the client's bankruptcy. The court denied Parker's motion to set aside the contempt order.

On June 28, 2013 – some three months after the March 8 date – Parker returned to court to contest the entry of the contempt sanctions judgment. Parker steadfastly made the same arguments, which the court once again rejected. Then, Parker successfully appealed the judgment holding him in contempt and declaring his liens void.

On March 16, 2015 – more than two years after the March 8 date – Parker returned to court for the evidentiary hearing resulting from his successful appeal. The court allowed Parker

-3-

to testify in a narrative form, subject to cross-examination by Nelson's attorney and to questions from the court. Although his testimony was confusing, he continued to maintain "There's absolutely no proof that the automobile accident was discharged in bankruptcy; and certainly if it was, I did not know it. I did not act in a contemptuous manner because the automobile case, to my knowledge, was exempt from the bankruptcy. The medical bills were not discharged in bankruptcy. The work that I did for Jessica Nelson on the automobile accident was not discharged in bankruptcy." Hr'g Tr. (March 16, 2015) at 58:6-13. Although there was some equivocation, Parker responded in the affirmative when the court asked him whether his attorney fees claim was still covered by his purported liens. The court was trying to determine whether Parker's position, more than two years after March 8, 2013, was the same as he had maintained in his previous appearances before the court.

After hearing Parker's testimony and argument, the bankruptcy court, as the trier of fact, found that "Parker's continued assertion of the lien[s] still impairs the settlement in debtor's exempt auto accidents by causing a portion of the settlement funds to be held in trust." Hr'g Tr. (April 10, 2015) at 15:5-8. In addition, the bankruptcy court unfavorably compared Parker's behavior to the creditors in ZiLOG, who stayed their lawsuit pending the bankruptcy court's resolution of the contempt issue. The majority opines that Parker had no affirmative duty to disclaim his asserted interest in the settlement proceeds; on these facts, however, I agree with the bankruptcy court that Parker did have such a duty. See, e.g.,

-4-

In re Kuehn, 563 F. 3d 289, 292-93 (7th Cir. 2009) (rejecting the creditor's argument that its conduct was passive as opposed to coercive, the court held the university creditor's refusal to provide a transcript to the debtor violated both the § 362 automatic stay and the § 524 discharge injunction) and State of California v. Farmers Markets, Inc. (In re Farmers Markets, Inc), 792 F. 2d 1400, 1404 (9th Cir. 1986) ("the state's refusal to transfer the [liquor] licenses constituted an act to collect or recover a claim, and thus violated § 362(a)(6)").

Essentially, the majority finds reversible error because the bankruptcy court did not make an express finding that Parker knew that the discharge injunction applied to his attorney fees claims and because they are not convinced that the record would support such a finding by clear and convincing evidence. The majority also expresses concern that some of Parker's acts that violated the discharge injunction occurred before March 8, 2013, the date on which the court found he knew that the discharge injunction applied to his prepetition attorney fees debt. The majority posits that the second element of ZiLOG, intentional acts in violation of the discharge injunction, was not satisfied because there is no evidence in the record showing that Parker acted to collect his discharged debt or to enforce his purported liens after the March 8 date. In fact, the majority argues that Parker cannot be "faulted" for failing affirmatively to release his purported liens.

I respectfully disagree with these aspects of the majority decision. I consider the majority's construction of the bankruptcy court's findings overly strict. As an appellate

-5-

court, we must construe the bankruptcy court's findings of fact favorably, such that any doubt as to what the bankruptcy court meant is resolved in favor of upholding rather than invalidating the bankruptcy court's judgment. See Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1384 (9th Cir. 1987) (citing Wells Benz, Inc. v. United States ex rel. Mercury Elec. Co., 333 F.2d 89, 92 (9th Cir. 1964)). As a result, "whenever, from facts found, other facts may be inferred which will support the judgment, such inferences will be deemed to have been drawn." Id. Accord, Clyde Equipment Co. v. Fiorito, 16 F.2d 106, 107 (9th Cir. 1926).

Here, the bankruptcy court's reliance on the ZiLOG standard is clear, and its finding was unequivocal that the first element of the ZiLOG test had been met. Moreover, a fair reading of the entirety of the bankruptcy court's ruling reflects the bankruptcy court's understanding that ZiLOG's first element required proof by clear and convincing evidence that Parker knew the discharge applied to his prepetition attorney fees claims. The evidence in the record, recited above, was sufficient to support this finding.

As for the bankruptcy court's finding that the second ZiLOG element was met, Parker's continued assertion of his lien against a portion of the settlement proceeds effectively prevented Nelson from receiving all of those proceeds. It is irrelevant that a portion of Parker's liens might have been for postpetition legal services. So long as the liens were asserted, at least in part, on account of his prepetition claims, Parker's continued interference with Nelson's right to

-6-

receive the settlement proceeds constituted intentional acts in violation of the discharge injunction.

Furthermore, the majority arguably reads In re ZiLOG, Inc. too broadly. Under the majority's reading, Parker avoids a finding of contempt simply by testifying (credibly) that he did not subjectively believe that the discharge applied to his attorney fees claims, no matter how misguided or unreasonable his belief might have been. I question whether In re ZiLOG, Inc. intended such an expansive reading of its holding, given that such a reading seemingly would render the bankruptcy discharge all but toothless.

In my view, ZiLOG's holding was dependent on the facts of that case. In ZiLOG, employees of the debtor corporation violated the discharge injunction because they had received conflicting and deficient information regarding whether it applied to their employment discrimination lawsuit. 450 F.3d at 1003-05. Clearly, the ZiLOG court was troubled by the difference between a litigant who knowingly and intentionally violates a court order about which the litigant has personal knowledge and a creditor who violates an injunction imposed by a statute without the same knowledge and understanding of its application to the creditor's conduct. Id. at 1007-09. In re ZiLOG, Inc. holds that creditors should not be held in contempt for violation of an order unless they are actually aware that the subject order applies to them. Id.

Parker's knowledge and conduct is in no way similar to the ZiLOG creditors. He is an attorney. He was informed by Nelson's bankruptcy attorney and by the bankruptcy court that

his prepetition attorney fees were discharged in Nelson's bankruptcy case and that his attorney fees liens were void because they were perfected in violation of the automatic stay. Despite this information, Parker bullheadedly continued to assert a contrary position so that, more than two years after her discharge was entered, a portion of Nelson's settlement proceeds was still being withheld due to Parker's continued assertion of his liens. In short, Parker's knowledge and conduct in no way resembles that of the creditors in ZiLOG; it is clear here that Parker knowingly and intentionally violated the discharge injunction.

Parker's knowledge and conduct actually is more similar to that of the contemnors in McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). In McComb, the contemnors adopted new employee compensation plans designed to circumvent a court order requiring them to comply with federal law regulating overtime pay. In response to the contempt citation, the employers argued the provisions in their new employee compensation plans were not specifically enjoined, so they could not be held in contempt. The Supreme Court rejected this argument:

> We need not impeach the findings of the lower courts that respondents had no purpose to evade the decree, in order to hold that their violations of it warrant the imposition of sanctions. They took a calculated risk when under the threat of contempt they adopted measures designed to avoid the legal consequences of the Act. Respondents are not unwitting victims of the law. Having been caught in its toils, they were endeavoring to extricate themselves. They knew full well the risk of crossing the forbidden line. Accordingly where as here the aim is remedial and not punitive, there can be no complaint that the burden of any uncertainty in the decree is on respondent's shoulders.

Id. at 193; see also Donovan v. Sureway Cleaners, 656 F2d 1368,

1372-73 (9th Cir. 1981) (analogous facts and holding). Like the contemnors in <u>McComb</u>, Parker knew and understood the legal effect of the discharge order and, instead of complying with the discharge order, he continued to insist that his prepetition attorney fees were not discharged and were secured by his purported liens.

Unlike the majority, I believe the bankruptcy court correctly held Parker in contempt based on his demonstrated knowledge and conduct. Therefore, I respectfully dissent.